1  Alex M. Weingarten (SBN 204410)
      aw@wbllp.com
2  Ruth M. Moore (SBN 216848)
      rm@wbllp.com
3  Vartanoush Defterderian (SBN 274416)
      vmd@wbllp.com
4  WEINGARTEN BROWN LLP
5  10866 Wilshire Boulevard, Suite 500
   Los Angeles, California 90024-4340
6  Telephone:  (310) 229-9300
7  Facsimile:   (310) 229-9380

8  *Attorneys for Plaintiff*
   *The Sliding Door Company*
9

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13 THE SLIDING DOOR COMPANY, a California Corporation, | CASE NO.: EDCV 13-00196-JGB-DTB |
| 14 | |
| 15 Plaintiff, | **PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS** |
| 16 v. | |
| 17 KLS DOORS, LLC, a California Limited Liability Company; COX U.S.A., a division of KLS DOORS, LLC, | Date:    April 29, 2013 Time:   9:00 a.m. |
| 18 | Hon. Jesus G. Bernal |
| 19 | |
| 20 Defendants. | Location *(as of March 27, 2013)*: Courtroom 1 |
| 21 KLS DOORS, LLC, a California Limited Liability Company; COX U.S.A., a division of KLS DOORS, LLC, | 3470 Twelfth Street Riverside, CA 92501 |
| 22 | |
| 23 | [Filed concurrently with Declaration of Todd Schwartz and Proposed Order] |
| 24 Counter-Plaintiffs, | |
| 25 v. | |
| 26 THE SLIDING DOOR COMPANY, a California Corporation, | |
| 27 | |
| 28 Counter-Defendant. | |

WEINGARTEN BROWN LLP

22400.2

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE THAT** on April 29, 2013 at 9:00 a.m. in the Courtroom of the Honorable Jesus G. Bernal, Courtroom 1, located at 3470 Twelfth Street, Riverside, California, 92501, Plaintiff The Sliding Door Company, through its undersigned counsel, hereby moves this Court to dismiss Defendants KLS Doors, LLC and COX U.S.A.'s (collectively, "Defendants") counterclaims. Plaintiff's motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and is based on this Motion, the Memorandum of Points and Authorities filed herewith, the accompanying Declaration of Todd Schwartz in support of the Motion, and the records and pleadings on file in this action.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 20, 2013.

Dated:  March 29, 2013          WEINGARTEN BROWN LLP
Alex M. Weingarten
Ruth M. Moore
Vartanoush Defterderian


By:  _____/s/ Alex M. Weingarten_____
Alex M. Weingarten
aw@wbllp.com

*Attorneys for Plaintiff*
The Sliding Door Company

WEINGARTEN BROWN LLP

WB

i

MOTION TO DISMISS COUNTERCLAIMS

22400.2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ..................................................................................1

II.   BACKGROUND ....................................................................................2

    A.    Sliding Door and the '729 Patent........................................................2

    B.    Defendants' Infringement of the '729 Patent and Sliding Door's Trade Dress ..........................................................................................2

    C.    Defendants' Counterclaims.................................................................3

III.  LEGAL STANDARDS ..........................................................................4

IV.  ARGUMENT .........................................................................................5

    A.    Defendants Fail to Plausibly Allege a Commercial Advertisement to Support Their False Advertising Claim ..................5

    B.    Defendants Fail to Allege Unlawful, Unfair, or Fraudulent Conduct to Support Their State Law Unfair Competition Claim .........7

        1.    Defendants Fail to Allege "Unlawful" Conduct.......................8

        2.    Defendants Fail to Allege "Unfair" Conduct ...........................8

        3.    Defendants Fail to Allege "Fraudulent" Conduct .....................9

    C.    The Counterclaims Challenging Plaintiff's Communications to Customers On Their Face Allege Facts Defeating Liability .............10

        1.    Plaintiff's Communications Are Protected Petitioning Activity Under the First Amendment ...................................10

        2.    Plaintiff's Communications Are Protected Under California's Broad Litigation Privilege ...................................12

    D.    Defendants Fail to Plead Sufficient Facts to Allege Declaratory Relief Claims Plausibly Entitling Them to Relief ..............................14

        1.    Defendants Fail to Allege the Product(s) Claimed to Be Non-Infringing..................................................................14

        2.    Defendants Fail to Allege Facts Showing Patent Invalidity ..............................................................................15

V.    CONCLUSION ....................................................................................15



WEINGARTEN BROWN LLP

ii

22400.2

1

# TABLE OF AUTHORITIES

Page

2   **FEDERAL CASES**

3

4   *Ashcroft v. Iqbal*
      556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..........................*passim*

5   *Avery Dennison Corp. v. Acco Brands, Inc.*
6      CV99-1877DT(MCX), 2000 WL 986995 (C.D. Cal. Feb. 22, 2000)............ 6, 13

7   *Balistreri v. Pacifica Police Dept.*
8      901 F.2d 696 (9th Cir. 1988) ................................................................. 4

9   *Bell Atl. Corp. v. Twombly*
10      550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..........................*passim*

11  *Daly v. Viacom*
      238 F. Supp. 2d 1118 (N.D. Cal. 2002) .................................................. 8
12

13  *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*
      365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961) ("*Noerr*") ........................ 10
14

15  *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*
      711 F. Supp. 2d 1074 (C.D. Cal. 2010)................................................... 12

16  *Englewood Lending Inc. v. G&G Coachella Invests., LLC*
17      651 F. Supp. 2d 1141 (C.D. Cal. 2009)................................................... 14

18  *Futuristic Fences, Inc. v Illusion Fence Corp.*
19      558 F. Supp. 2d 1270 (S.D. Fla. 2008)................................................. 5, 6

20  *Grid Sys. Corp. v. Texas Instruments, Inc.*
21      771 F. Supp. 1033 (N.D. Cal. 1991)..................................................... 15

22  *In re Actimmune Mktg. Litig.*
      No. C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ................ 8
23

24  *In re Silicon Graphics Inc. Sec. Litig.*
      183 F.3d 970 (9th Cir. 1999) ........................................................... 5, 7
25

26  *ISI Intern., Inc. v. Broden Ladner Gervais LLP*
      316 F.3d 731 (7th Cir. 2003) ............................................................ 5

27  *Jablon v. Dean Witter*
28      614 F.2d 677 (9th Cir. 1980) ............................................................ 4



WEINGARTEN BROWN LLP

*Jackson v. Roe*
  273 F.3d 1192 (9th Cir. 2001) ................................................................. 8

*Knievel v. ESPN*
  393 F.3d 1068 (9th Cir. 2005) ................................................................. 7

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*
  No. 97-1568-(JAG), 2007 WL 979854 (D.N.J. Mar. 30, 2007) ...................... 5-6

*Matsushita Elecs. Corp. v. Loral Corp.*
  974 F. Supp. 345 (S.D.N.Y. 1997) ........................................................... 11

*Matthews Intern. Corp. v. Biosafe Eng'g, LLC*
  695 F.3d 1322 (Fed. Cir. 2012) ................................................................ 9

*Melea Ltd. v. Quality Models Ltd.*
  345 F. Supp. 2d 743 (E.D. Mich. 2004) ............................................... 11, 12

*PageMelding, Inc. v. ESPN, Inc.*
  C 11-06263 WHA, 2012 WL 3877686 (N.D. Cal. Sept. 6, 2012) ................... 15

*Parrino v. FHP, Inc.*
  146 F.3d 699 (9th Cir. 1998) .............................................................. 5, 7

*Porous Media Corp. v. Pall Corp.*
  201 F.3d 1058 (8th Cir. 2000) ................................................................. 6

*Qarbon.com Inc. v. eHelp Corp.*
  315 F. Supp. 2d 1046 (N.D. Cal. 2004) ................................................ 9, 15

*Raines v. Switch Mfg.*
  No. C-96-2648 DLJ, 1997 WL 578547 (N.D. Cal. July 28, 1997) .................. 12

*Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.*
  C-06-4693 JCS, 2007 WL 1394427 (N.D. Cal. May 10, 2007) .................. 12, 13

*Rice v. Fox Broad. Co.*
  330 F.3d 1170 (9th Cir. 2003) ................................................................. 5

*Sharper Image Corp. v. Target Corp.*
  425 F. Supp. 2d 1056 (N.D. Cal. 2006) ..................................................... 13

*Sosa v. DIRECTV, Inc.*
  437 F.3d 923 (9th Cir. 2006) ................................................................. 10

WEINGARTEN BROWN LLP

iv

22400.2

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd.*
    No. 02-12102-RWZ, 2006 WL 1766434 (D. Mass. June 28, 2006) .................. 11

*Sybersound Records, Inc. v. UAV Corp.*
    517 F.3d 1137 (9th Cir. 2008) ............................................................. 8

*Theme Promotions, Inc. v. News Amer. Marketing FSI*
    546 F.3d 991 (9th Cir. 2008) ....................................................... 10, 11

*U.S. Philips Corp. v. Princo Corp.*
    No. 02 Civ. 246 (CLB), 2005 U.S. Dist. LEXIS 6820 (S.D.N.Y. Jan. 24,
    2005) .................................................................................. 11

*United Mine Workers v. Pennington*
    381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965) ("*Pennington*") .......... 10

*Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC*
    2012 WL 3782543 (S.D. Cal. 2012) ...................................................... 9

*White Mule Co. v. ATC Leasing Co. LLC*
    540 F. Supp. 2d 869 (N.D. Ohio 2008) ................................................. 6

*Wistron Corp. v. Phillip M. Adams & Assocs., LLC*
    C-10-4458 EMC, 2011 WL 1654466 (N.D. Cal. Apr. 28, 2011) ...................... 15

*Zenith Elecs. Corp. v. Exzec, Inc.*
    182 F.3d 1340 (Fed. Cir. 1999) ........................................................ 9

**STATE CASES**

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*
    20 Cal. 4th 163, 183 Cal. Rptr. 2d 548 (1999) ........................................ 8

*Daugherty v. Am. Honda Motor Co.*
    144 Cal. App. 4th 824 (2006) ........................................................... 8

*Neville v. Chudacoff*
    160 Cal. App. 4th 1255, 73 Cal. Rptr. 3d 383 (2008) ................................ 13

*Rubin v. Green*
    4 Cal. 4th 1187, 17 Cal. Rptr. 2d 828 (1993) ........................................ 12

**FEDERAL STATUTES, RULES, AND CONSTITUTIONAL PROVISIONS**

15 U.S.C. § 1125 ............................................................................. 5



WEINGARTEN BROWN LLP

v

35 U.S.C. §§ 101, 102, 103 ................................................................. 15

Fed. R. Civ. P. 1 ............................................................................... 15

Fed. R. Civ. P. 8 ............................................................................... 15

Fed. R. Civ. P. 12 ............................................................................. 4

Fed. R. Evid. 201 .............................................................................. 2

Fed. R. Evid. 501 ............................................................................ 12

U.S. Const. amend. I ...................................................................... 10

**STATE STATUTES**

Cal. Civil Code § 47 ....................................................................... 12

Cal. Bus. & Prof. Code § 17200 ...................................................... 7, 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WEINGARTEN BROWN LLP



MOTION TO DISMISS COUNTERCLAIMS

22400.2

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2 **I.   INTRODUCTION**

3         Shortly after filing this action to protect its valuable patent and other

4 intellectual property rights, The Sliding Door Company ("Sliding Door" or

5 "Plaintiff") notified certain purchasers or potential purchasers that they too faced

6 liability for purchasing KLS Doors, LLC and Cox U.S.A. ("Defendants")'s

7 infringing products.  Defendants have now filed counterclaims for "false

8 advertising" under the Lanham Act and violation of California's Unfair

9 Competition Law ("UCL") based on these litigation threats.

10        Defendants' attacks on Sliding Door's litigation-related communications fail

11 for several reasons.  First, communications to purchasers or potential purchasers

12 regarding litigation or asserting patent rights do not constitute "commercial

13 advertising or promotion" under the Lanham Act.  Second, those communications

14 do not constitute "unlawful," "unfair," or "fraudulent" acts under the UCL.  Third,

15 communications incident or related to litigation are protected from liability both

16 under the *Noerr-Pennington* doctrine, which derives from the constitutional right

17 of petition, and California's litigation privilege.  Simply put, Defendants cannot

18 assert retaliatory counterclaims against Sliding Door's efforts to protect its patent

19 rights.

20        Defendants' declaratory relief claims should also be dismissed.  Defendants

21 fail to allege the products they claim are non-infringing or any factual basis for

22 asserting that Sliding Door's patent is invalid.  If Defendants' vague allegations

23 intend only to seek declaration regarding the products already at issue, then they

24 are properly dismissed as duplicative of Sliding Door's infringement claims

25 already at issue.  Defendants' vague pleading, however, appears designed to open a

26 Pandora's Box of discovery by not committing to those products or specifying any

27 factual grounds for contending the patent is defective.  Defendants' factually

28 devoid declaratory relief claims are therefore properly dismissed.

1

## II.    BACKGROUND

This Motion concerns the Counterclaims that Defendants have asserted in response to Sliding Door's lawsuit for infringement of its patent and trade dress. Although the facts alleged in Sliding Door's Complaint are not accepted as true on this Motion, the fact that they are at issue in the litigation is subject to judicial notice, *see* Fed. R. Evid.  201, and pertinent to an understanding of the Counterclaims and the bars to relief presented by the *Noerr-Pennington* doctrine and litigation privilege discussed below.

### A.    Sliding Door and the '729 Patent

Sliding Door owns the patent to a sliding door system that provides a smooth and quiet glide, a safety mechanism to ensure that the sliding door remains on its track, and a means for effecting design flexibility in a time- and cost-efficient manner.  (*See* Complaint ¶¶ 9, 13-14; U.S. Patent No. 7,647,729, attached as Exhibit A to Complaint.)  Sliding Door manufactures and sells a variety of sliding doors incorporating this patented technology, including but not limited to room dividers, closet doors, office partitions, and wall slide doors.  (Complaint ¶ 10.)  As a result, Sliding Door is an industry leader in innovative, safe, and decorative sliding doors.  (*Id.* ¶ 12.)

### B.    Defendants' Infringement of the '729 Patent and Sliding Door's Trade Dress

Defendants have replicated Sliding Door's patented sliding door systems and inherently distinctive Sliding Door Trade Dress with a series of cheap knockoffs and have used confusingly similar names in describing these products.  (*Id.* ¶¶ 25, 26, 28, 30, 31.)  Rather than innovate and develop its own technology and a unique style for its sliding door products, Defendants copied Sliding Door's technology and innovative style in these infringing products.  (*Id.* ¶ 27.)  In their Answer, Defendants admit that they knew of the '729 Patent when they designed their products.  (Answer ¶ 24.)

WEINGARTEN BROWN LLP

WB

22400.2

MOTION TO DISMISS COUNTERCLAIMS

1   On January 31, 2013, Sliding Door sued Defendants for patent infringement,

2   federal trade dress infringement, state trade dress dilution and injury to business

3   reputation, intentional interference with prospective economic advantage, and

4   unjust enrichment.  (*See* Complaint.)

5   ## C.   Defendants' Counterclaims

6   In response to Plaintiff's suit, Defendants assert five counterclaims:  three

7   defensive claims for declaratory relief and two affirmative claims based on

8   Plaintiff's communications regarding this litigation.  Defendants' defensive

9   counterclaims seek a declaration of non-infringement of the '729 Patent, a

10   declaration of invalidity of the '729 Patent, and a declaration of non-infringement

11   of Plaintiff's trade dress.  (*See* Answer to Complaint, Counterclaims and Jury

12   Demand (hereinafter "Answer" and "Counterclaims," respectively, as separately

13   numbered), Counterclaims ¶¶ 7-24.)

14   Defendants' affirmative claims for false advertising and unfair competition

15   are based on Plaintiff's statements that "certain of [Defendants'] products infringe

16   Sliding Door's '729 Patent."  (*See* Counterclaims at ¶ 26.)  Specifically, a few days

17   after filing suit for patent and trade dress infringement, Plaintiff sent an email

18   advising purchasers or potential purchasers of Defendants' products that (1)

19   Plaintiff owns the '729 Patent, (2) Defendants are infringing the '729 Patent by

20   utilizing Plaintiff's top and bottom track rolling and locking system in Defendant

21   Cox's *Urban Door Collection* product line, (3) Plaintiff filed this action to address

22   Defendants' unlawful conduct and seek injunctive relief and damages, and (4)

23   Plaintiff "will continue to aggressively police its intellectual property rights and

24   will hold those who infringe on [its] rights accountable," "includ[ing] "those who

25   purchase any infringing product."  (Declaration of Todd Schwartz ("Schwartz

26   Decl.") Ex. 1; *see also* Counterclaims at ¶¶ 26-37.)  The email advised the recipient

27   to "guide [itself] accordingly."  (Schwartz Decl. Ex. 1.)

28

WEINGARTEN BROWN LLP

WB

3

22400.2

## III.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff fails to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Determining whether a pleading states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  A pleading's "'basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citations omitted).

To survive a motion to dismiss, the complainant must sufficiently allege facts that, when taken as true, support the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678-79.  The complainant cannot rely on "an unadorned, the-defendant-harmed-me accusation," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.* at 678.  "'[N]aked assertion[s]' devoid of 'further factual enhancement'" also will not suffice. *Id.*  Facts "'merely consistent with' a defendant's liability" fail to plausibly show the pleader's entitlement to relief. *Id.* Rather, the claimant must assert factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The challenged pleading or claim is properly dismissed where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The challenged pleading or claim is also properly dismissed if it discloses an affirmative defense or other bar to recovery. *See Jablon v. Dean Witter*, 614 F.2d 677, 682 (9th Cir. 1980).  Although the court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the claimant, it should disregard unsupported conclusions or interpretations of law.

MOTION TO DISMISS COUNTERCLAIMS

22400.2

*Iqbal*, 556 U.S. at 678.

In ruling on a motion to dismiss, a court properly considers documents that are either alleged or relied upon in the challenged pleading. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *abrogated on other grounds by South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006). This "incorporation by reference doctrine" applies to documents not physically attached to the pleading so long as their authenticity is not in dispute. *Silicon Graphics*, 183 F.3d at 986.

Applying these principles, Defendants' Counterclaims should be dismissed as a matter of law.

## IV.   ARGUMENT

### A.   Defendants Fail to Plausibly Allege a Commercial Advertisement to Support Their False Advertising Claim

Sliding Door's communications regarding Defendants' patent infringement and this litigation cannot be actionable as false advertising under the Lanham Act. A false advertising claimant must show, *inter alia*, false "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). To constitute "commercial advertising or promotion," representations must be "for the purpose of influencing consumers to buy defendant's goods or services" and "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003).

Communications sent to customers regarding litigation or asserting intellectual property infringement do not constitute "commercial advertising or promotion" under the Lanham Act. *E.g., ISI Intern., Inc. v. Broden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003); *Futuristic Fences, Inc. v Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1279-82 (S.D. Fla. 2008); *M. Eagles Tool*

MOTION TO DISMISS COUNTERCLAIMS

WEINGARTEN BROWN LLP

WB

22400.2

*Warehouse, Inc. v. Fisher Tooling Co., Inc.,* No. 97-1568-(JAG), 2007 WL 979854, at *15-16 (D.N.J. Mar. 30, 2007); *Avery Dennison Corp. v. Acco Brands, Inc.*, CV99-1877DT(MCX), 2000 WL 986995, at *6-8 (C.D. Cal. Feb. 22, 2000); *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 893-94, 897-98 (N.D. Ohio 2008); *cf. Porous Media Corp. v. Pall Corp.*, 201 F.3d 1058, 1059 (8th Cir. 2000) (press releases regarding litigation did not constitute "commercial advertising or promotion").  The purpose of such communications is not to influence customers to buy the sender's products, but "to inform the recipients of allegations of infringement, to give them a chance to discontinue the infringing activity, and to protect the sender's legitimate legal rights." *Futuristic Fences*, 558 F. Supp. 2d at 1281.

Here, the Counterclaims show that Sliding Door's alleged representations were the same type of cease-and-desist statements to protect intellectual property rights that these cases held are not "commercial advertising or promotion" under the Lanham Act.  Defendants merely allege that Sliding Door told Defendants' customers and potential customers that certain of Defendants' products infringe the '729 Patent.  (*See* Counterclaims ¶¶ 26-30.)

Although the Counterclaims include "a few stray statements" referring to commercial advertising, "on fair reading these are merely legal conclusions resting on the prior allegations" of Sliding Door's cease-and-desist email.  *Twombly*, 550 U.S. at 557, 564 (disregarding conclusory allegations not plausibly suggested by facts actually alleged); *see also Iqbal*, 556 U.S. at 679 (suggesting that court considering a motion to dismiss "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth").  Specifically, the Counterclaims show that Defendants' allegation of an "advertising campaign" is based on Sliding Door's statements that "certain of [Defendants'] products infringe Sliding Door's '729 Patent;" that the February 6, 2013 email asserting infringement is an "example" of that ostensible "advertising

MOTION TO DISMISS COUNTERCLAIMS

WEINGARTEN BROWN LLP

WB

22400.2

1  campaign;" and that other communications at issue involve "the same [so-called]

2  commercial advertising."  (*See* Counterclaims ¶¶ 26, 27, 29.)

3      Additionally, the Court properly considers the February 6, 2013 email itself

4  in evaluating the Counterclaims, which allege and rely upon that email.  *See*

5  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Silicon Graphics*, 183 F.3d

6  at 986; *Parrino*, 146 F.3d at 705-06.  The email identifies Plaintiff as the rightful

7  owner of the '729 Patent, and informs the recipient of the patent infringement suit

8  filed against Defendants, stating:

9          We write to advise that <u>KLS Doors, LLC</u> and its

10         subsidiary <u>COX USA</u> are infringing on our patent.  Our

11         lawyers have filed suit against KLS and COX in Federal

12         Court (USDC Central District of California Case No.

13         5:13-cv-00196-JGB-DTB) to address their unlawful

14         conduct and will be seeking injunctive relief and

15         monetary damages.

16  (Schwartz Decl. Ex. 1.)  The letter then warns the recipient that Sliding Door "has

17  and will continue to aggressively police its intellectual property rights and will

18  hold those who infringe on [its] rights accountable," including "those who

19  purchase any infringing product."  (*Id.*)  The email instructs the recipient to "guide

20  [itself] accordingly."  (*Id.*)

21      In short, Defendants' conclusory allegations do not plausibly show any

22  "commercial advertising or promotion."  Their cause of action under the Lanham

23  Act should therefore be dismissed for failure to state a claim.

24  **B.  Defendants Fail to Allege Unlawful, Unfair, or Fraudulent**

25  **Conduct to Support Their State Law Unfair Competition Claim**

26  Defendants do not specify which prong of the California Unfair Competition

27  Law, California Business and Professions Code section 17200 ("the UCL"), they

28  contend Plaintiff violated.  (*See* Counterclaims ¶ 36.)  The UCL proscribes "any

**WEINGARTEN BROWN LLP**

WB

MOTION TO DISMISS COUNTERCLAIMS

22400.2

1    unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code

2    § 17200. Defendants' claim fails because they have not alleged facts showing a

3    UCL violation under any of the three prongs. *See id.*; *Daugherty v. Am. Honda*

4    *Motor Co.*, 144 Cal. App. 4th 824, 837 (2006).

### 1.    Defendants Fail to Allege "Unlawful" Conduct

6    The "unlawful" prong of the UCL "borrows violations of other laws . . . and

7    makes those unlawful practices actionable under the UCL." *In re Actimmune*

8    *Mktg. Litig.*, No. C 08-02376 MHP, 2009 WL 3740648, at *15 (N.D. Cal. Nov. 6,

9    2009). "Thus, a violation of another law is a predicate for stating a cause of action

10   under the UCL's unlawful prong." *Id.* Because Defendants' Lanham Act claim

11   fails, Defendants cannot state a UCL claim under the "unlawful" prong. *See*

12   *Jackson v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (UCL "does not give a

13   plaintiff license to 'plead around' the absolute bars to relief contained in other

14   possible causes of action by recasting those causes of action as ones for unfair

15   competition"); *Daly v. Viacom*, 238 F. Supp. 2d 1118, 1126 (N.D. Cal. 2002)

16   (where plaintiff's other claims fail, so does UCL claim based on the same

17   conduct).

### 2.    Defendants Fail to Allege "Unfair" Conduct

19   Defendants also do not allege any "unfair" conduct under the UCL. Where a

20   competitor brings a UCL claim under the "unfair" prong, it must establish that the

21   defendant's conduct threatened an incipient antitrust violation or violated antitrust

22   policies with effects akin to an antitrust violation. *Cel-Tech Comms., Inc. v. Los*

23   *Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187, 183 Cal. Rptr. 2d 548, 565 (1999);

24   *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151-53 (9th Cir. 2008)

25   (dismissing competitor's claim under the "unfair" prong of the UCL for failure to

26   plead an incipient violation of the antitrust laws). Defendants do not and cannot

27   meet this standard. The antitrust laws "were enacted for the 'protection of

28   *competition*, not *competitors*.'" *Cel-Tech Comms., Inc.*, 20 Cal. 4th at 186

WEINGARTEN BROWN LLP

8

MOTION TO DISMISS COUNTERCLAIMS

22400.2

1 (emphasis in original) (citations omitted).  The Counterclaims do not allege any

2 facts that suggest that Plaintiff's conduct seeking to enforce its intellectual property

3 rights against Defendants harmed competition, rather than just Defendants.

### 3.    Defendants Fail to Allege "Fraudulent" Conduct

5 Defendants also fail to allege a claim under the "fraudulent" prong of the

6 UCL.  Even if a patentee's conduct was allegedly deceptive, any unfair

7 competition claim against a patentee must also allege that the patentee's conduct

8 with respect to its patent was in bad faith, i.e., committed with the knowledge that

9 the accused product did not infringe or that the patent was invalid or

10 unenforceable.  *See, e.g.*, *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355

11 (Fed. Cir. 1999) (holding "that bad faith is a prerequisite to" state unfair

12 competition laws where conduct complained of is patentee's alleged

13 misrepresentations regarding infringement); *Matthews Intern. Corp. v. Biosafe*

14 *Eng'g, LLC*, 695 F.3d 1322, 1332 n. 5 (Fed. Cir. 2012) ("F]ederal patent law

15 preempts state-law tort liability for a patent holder's good faith conduct in

16 communications asserting infringement of its patent and warning about potential

17 litigation.")  Defendants were therefore required to allege a factual basis plausibly

18 suggesting bad faith on the part of Sliding Door.  *See Qarbon.com Inc. v. eHelp*

19 *Corp.*, 315 F. Supp. 2d 1046, 1053 (N.D. Cal. 2004) (dismissing UCL

20 counterclaim that did not allege "bad faith" with "reasonable particularity"); *cf.*

21 *Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC*,

22 2012 WL 3782543, at *1-2 (S.D. Cal. 2012) (dismissing intentional interference

23 counterclaim against patentee because the accused infringer failed to plead specific

24 facts to raise a plausible inference of patentee's subjective and objective bad faith

25 in asserting patent infringement).  Here, Defendants make no such allegation.  (*See*

26 Counterclaims ¶¶ 35-37.)

27

28

WEINGARTEN BROWN LLP

WB

**C.    The Counterclaims Challenging Plaintiff's Communications to Customers On Their Face Allege Facts Defeating Liability**

**1.    Plaintiff's Communications Are Protected Petitioning Activity Under the First Amendment**

Defendants' Lanham Act and UCL counterclaims are based entirely on Sliding Door's communications with Defendants' purported customers regarding its infringement claim after initiating this litigation.  As a matter of law, such counterclaims based on "[c]onduct incidental to a lawsuit" are barred by the Supreme Court's *Noerr-Pennington* doctrine under the First Amendment right of petition.  *Theme Promotions, Inc. v. News Amer. Marketing FSI*, 546 F.3d 991, 1006-07 (9th Cir. 2008); *see also* U.S. Const. amend. I; *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961) ("*Noerr*"); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965) ("*Pennington*").  A litigant's communications to private parties are protected petitioning activity under the First Amendment so long as they are sufficiently related to the litigation.  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006).

Here, Defendants' counterclaims and the email they rely upon make clear that Sliding Door's alleged communications were incidental and related to this lawsuit.  *See supra* at 6-8 (discussing Counterclaims ¶¶ 26-30; Schwartz Decl. Ex. 1).  Shortly after filing this action, Sliding Door notified purchasers or potential purchasers of Defendants' products that it had sued Defendants for infringing Sliding Door's patent and that it would also pursue its intellectual property rights as to "those who purchase any infringing product."  *See id.*

Courts squarely hold that communications warning Defendants' customers of potential litigation if they purchase infringing products cannot be the basis for a claim by Defendants.  In *Theme Promotions*, for example, the Ninth Circuit held that the district court properly dismissed tortious interference counterclaims based

22400.2



WEINGARTEN BROWN LLP

on letters the defendant sent to the plaintiff's customers after the litigation between the plaintiff and defendant had begun.  *See* 546 F.3d at 1007-08.  The letters at issue, like the email alleged in Defendants' counterclaims, could be interpreted as threatening either to include the customers in the existing litigation between the plaintiff and the defendant or to bring some contemplated future lawsuit against the customers.  *Id.* at 1007-08.  Either way, the *Noerr-Pennington* doctrine barred liability.  *Id.*

Likewise, numerous courts have held that a patentee's letters to the alleged infringer's customers are protected activity under the *Noerr-Pennington* doctrine. *See, e.g., Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd.*, No. 02-12102-RWZ, 2006 WL 1766434, *35 (D. Mass. June 28, 2006) (patentee's email encouraging counterclaimant's customers to avoid participating in infringement to avoid liability); *U.S. Philips Corp. v. Princo Corp.*, No. 02 Civ. 246 (CLB), 2005 U.S. Dist. LEXIS 6820, *13-17 (S.D.N.Y. Jan. 24, 2005) (Attachment 1 to this Motion; not available on Westlaw) (patentee's letters informing customers of lawsuit and stating that they may be infringing patents); *Melea Ltd. v. Quality Models Ltd.*, 345 F. Supp. 2d 743, 749, 758-59 (E.D. Mich. 2004) (letters to alleged infringer's customers threatening patent infringement suits); *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (patentee's letters threatening suit against infringer's customers).

During the meet and confer on this motion, Defendants' counsel took the position that the *Noerr-Pennington* doctrine cannot be a ground for dismissal because it contains a sham exception.  However, the Counterclaims do not allege any facts showing that the suit was objectively baseless or that it was subjectively motivated by bad faith—both of which are necessary elements to invoke the sham exception.[1]  *See Theme Promotions*, 546 F.3d at 1007.  In the absence of factual

[1] The sham exception appears especially far-fetched here, where Defendants admit they designed their products with the '729 Patent in mind.  (*See* Answer ¶ 24.)

MOTION TO DISMISS COUNTERCLAIMS

WEINGARTEN BROWN LLP

WB

22400.2

1  allegations supporting the exception, a claim challenging litigation-related conduct

2  should be dismissed at the pleading stage.  *See, e.g., EcoDisc Tech. AG v. DVD*

3  *Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1083-84 (C.D. Cal. 2010);

4  *Raines v. Switch Mfg.*, No. C-96-2648 DLJ, 1997 WL 578547, at *6 (N.D. Cal.

5  July 28, 1997); *accord Melea*, 345 F. Supp. 2d at 758-59 (granting motion to

6  dismiss in the absence of *evidence* of improper purpose showing that infringement

7  allegation was a sham).  Otherwise, "if a bare allegation of bad faith litigation were

8  sufficient to defeat the *Noerr-Pennington* bar, every claimant would be able to

9  avoid the intent of the Supreme Court merely by alleging bad faith on the part of

10  the party seeking to enforce the patent."  *Raines*, 1997 WL 578547, at *6.

11      Accordingly, because the Lanham Act and UCL counterclaims on their face

12  show that they are barred by the *Noerr-Pennington* doctrine, they should be

13  dismissed.

### 2.      Plaintiff's Communications Are Protected Under California's Broad Litigation Privilege

16      Defendants' UCL counterclaim is also barred by California's litigation

17  privilege.  *See* Cal. Civil Code § 47(b); *Rubin v. Green*, 4 Cal. 4th 1187, 1200-03,

18  17 Cal. Rptr. 2d 828 (1993); *see also* Fed. R. Evid. 501.  Under California's

19  litigation privilege, "communications with 'some relation' to judicial proceedings"

20  are absolutely immune from tort liability.  *Rubin*, 4 Cal. 4th at 1193 (reinstating

21  judgment granting demurrer).  The privilege exists to provide litigants the utmost

22  freedom of access to courts "to secure and defend their rights . . . without fear of

23  being harassed subsequently by derivative tort actions."  *Id.* at 1194.

24      Because the privilege applies to a litigant's communications to third parties

25  with an interest in the litigation, a patentee's communications to purchasers and

26  potential purchasers of the alleged infringer's products are absolutely immune

27  from tort liability.  *See, e.g., Reid-Ashman Mfg., Inc. v. Swanson Semiconductor*

28  *Serv., L.L.C.*, C-06-4693 JCS, 2007 WL 1394427, at *10-11 (N.D. Cal. May 10,

MOTION TO DISMISS COUNTERCLAIMS

22400.2

WEINGARTEN BROWN LLP

2007); *Sharper Image Corp. v. Target Corp.* 425 F. Supp. 2d 1056, 1075-76, 1077-79 (N.D. Cal. 2006); *Avery Dennison*, 2000 WL 986995, at *9-10. In *Sharper Image*, for example, the litigation privilege barred a patent/trademark-infringement defendant's counterclaims based on the plaintiff's emails informing retailers of the lawsuit and asking them not to carry the defendant's product. In *Reid-Ashman*, the litigation privilege similarly barred a defendant's counterclaims against a patent infringement plaintiff based on the plaintiff's communications warning a potential purchaser of the defendant's product that it was the subject of an infringement action.

*Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1267-68, 73 Cal. Rptr. 3d 383 (2008) is also instructive. There, while contemplating litigation, Maxsecurity sent letters regarding Neville's alleged misappropriation of its trade secrets to a list of customers—persons whom Maxsecurity "reasonably could believe had an interest in the dispute as potential witnesses to, or unwitting participants in, Neville's alleged misconduct." *Id.* Because the letters "constituted an attempt to prevent further misuse of Maxsecurity's proprietary information, and thereby mitigate Maxsecurity's potential damage," and "contained no statements of fact concerning Neville that were not based on or related to the allegations that formed the basis of Maxsecurity's claims," the letters were absolutely privileged. *Id.*

Here, Defendants' unfair competition counterclaim is based on their allegation that Sliding Door sent an email advising a customer that KLS and COX were infringing Sliding Door's patent. (*See* Counterclaims ¶¶ 27, 35-37; Schwartz Decl. Ex. 1.) The email was an "attempt to prevent further misuse" of Sliding Door's patented technology, and contained no statements of facts regarding Defendants "that were not based on or related to the allegations that formed the basis of" Sliding Door's claims. Defendants' claim based on the email is therefore barred by the absolute immunity under California's litigation privilege and should be dismissed. *See Neville*, 160 Cal. App. 4th at 1267-68.



WEINGARTEN BROWN LLP

13

22400.2

**D.   Defendants Fail to Plead Sufficient Facts to Allege Declaratory Relief Claims Plausibly Entitling Them to Relief**

**1.   Defendants Fail to Allege the Product(s) Claimed to Be Non-Infringing**

In their claims for declaratory relief of non-infringement, Defendants fail to allege which of their products are non-infringing.  (*See* Counterclaims ¶¶ 7-13, 19-24.)  "Absent identification of the products accused of infringement," Defendants cannot establish a "concrete case or controversy of sufficient specificity to satisfy *Twombly* and *Iqbal*."  *See Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, C-10-4458 EMC, 2011 WL 1654466, at *12 (N.D. Cal. Apr. 28, 2011) ("[W]ithout identifying the accused products, there simply is no way to adjudicate an infringement claim.").  Accordingly, Defendants' first and third causes of action for declaratory judgment for non-infringement of Sliding Door's patent and trade dress, respectively, fail to state a claim.

Moreover, to the extent that Defendants merely assert that the products already at issue on Sliding Door's infringement claims are non-infringing, the Court properly exercises its discretion by dismissing the needlessly duplicative claims.  *See, e.g., Englewood Lending Inc. v. G&G Coachella Invests., LLC*, 651 F. Supp. 2d 1141, 1144-47 (C.D. Cal. 2009) (dismissing counterclaim where the counterclaim is merely the denial of the allegations in plaintiff's claim).  If they concern the same products, Defendants' first and third causes of action for declaratory judgment are merely the flipside of Sliding Door's first and second causes of action.  (*Compare* Compl. ¶¶ 32-47 *with* Counterclaims ¶¶ 7-13, 19-24.)  Thus, here—as in *Englewood Lending Inc.*—Defendants "seek[] relief overlapping entirely with that sought by" Sliding Door.  *See Englewood Lending Inc.*, 651 F. Supp. 2d at 1147.

Dismissal of the non-infringement declaratory relief claim also advances the federal interest in "secur[ing] the just, speedy, and inexpensive determination of



WEINGARTEN BROWN LLP

14

22400.2

1   every action and proceeding."  Fed. R. Civ. P. 1; *see also Twombly*, 550 U.S. at
2   558 (stating that a pleading's "'basic deficiency should … be exposed at the point
3   of minimum expenditure of time and money by the parties and the court").  It
4   would be inefficient and wasteful to subject Sliding Door to non-infringement
5   discovery on unspecified products or to require Sliding Door to use its limited
6   allocation of discovery simply to pin down this basic pleading issue.  Defendants
7   have declined to amend their Counterclaims to address this problem.  Accordingly,
8   Defendants' vague non-infringement counterclaims should be dismissed.

**2.     Defendants Fail to Allege Facts Showing Patent Invalidity**

9
10  Defendants similarly fail to allege how Sliding Door's patent is invalid.
11  (Counterclaims ¶¶14-18.)  Rather, Defendants simply claim that the patent "fail[s]
12  to meet the requirements of patentability," without stating how any requirement
13  was not met.  (*Id.* at ¶ 15.)  Their third affirmative defense for patent invalidity
14  similarly baldly asserts, without any supporting factual enhancement, that the '729
15  Patent is "invalid for failure to comply with one or more requirements of the Patent
16  Act, 35 U.S.C. §§ 101, 102, 103, and/or 112."  (Answer at ¶ 63.)

17  An affirmative defense or counterclaim for declaratory judgment that merely
18  references these sections of the Patent Act and fails to provide the factual basis for
19  alleging a patent's invalidity is "radically insufficient."  *Qarbon.com Inc. v. eHelp*
20  *Corp.*, 315 F. Supp. 2d 1046, 1049-51 (N.D. Cal. 2004); *Grid Sys. Corp. v. Texas*
21  *Instruments, Inc.*, 771 F. Supp. 1033, 1042 (N.D. Cal. 1991).  Such conclusory
22  pleading fails to satisfy Rule 8's fair notice requirement.  *Qarbon.com*, 315 F.
23  Supp. 2d at 1049-51; *accord PageMelding, Inc. v. ESPN, Inc.*, C 11-06263 WHA,
24  2012 WL 3877686, at *3 (N.D. Cal. Sept. 6, 2012).  Defendants' second cause of
25  action and companion third affirmative defense should accordingly be dismissed.

**V.     CONCLUSION**

26
27  For the foregoing reasons, Defendants' Counterclaims fail to state a claim
28  and should be dismissed.

15

WEINGARTEN BROWN LLP

22400.2

1

Dated:  March 29, 2013

WEINGARTEN BROWN LLP
Alex M. Weingarten
Ruth M. Moore
Vartanoush Defterderian

By:  _____/s/ Alex M. Weingarten_____
        Alex M. Weingarten
        aw@wbllp.com

*Attorneys for Plaintiff*
 The Sliding Door Company

MOTION TO DISMISS COUNTERCLAIMS

22400.2

# ATTACHMENT 1





Warning
As of: Mar 27, 2013

**U.S. PHILIPS CORPORATION, Plaintiff, - against - PRINCO CORPORATION
and PRINCO AMERICA CORPORATION, Defendants. GIGASTORAGE
CORPORATION and GIGASTORAGE USA, Plaintiffs, - against - U.S. PHILIPS
CORPORATION and KONINKLIJKE PHILIPS ELECTRONICS N.V.,
Defendants.**

**02 Civ. 246 (CLB), 04 Civ. 2825 (CLB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

*2005 U.S. Dist. LEXIS 6820*

**January 24, 2005, Decided
January 24, 2005, Filed**

**SUBSEQUENT HISTORY:** Summary judgment granted by *U.S. Philips Corp. v. Princo Corp., 361 F. Supp. 2d 168, 2005 U.S. Dist. LEXIS 4709 (S.D.N.Y., 2005)*
Related proceeding at *U.S. Philips Corp. v. ITC, 424 F.3d 1179, 2005 U.S. App. LEXIS 20202 (Fed. Cir., 2005)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed motions to dismiss defendants' Sherman Act, *15 U.S.C.S. §§ 1,2,* and Clayton Act, *15 U.S.C.S. § 13,* counterclaims for lack of antitrust injury, antitrust standing and the application of the Noerr-Pennington doctrine.

**OVERVIEW:** Defendants alleged, inter alia, that plaintiff formed an unlawful patent pool, which caused injury to competition by restricting output and advanced antitrust counterclaims under the Sherman Act for price-fixing and mandatory royalties for expired patents as well as claims under the Clayton Act for tying of undesirable patents. The plaintiff asserted that the defendants had not offered any evidence to prove a causal connection between the plaintiff's alleged anticompetitive conduct and the defendants' injuries. The district court agreed that the conduct which caused the defendants' injuries was not the same conduct which caused injury to competition in the relevant market and accordingly found that the defendants failed to raise a genuine issue of fact as to whether they were injured because of injury to competition caused by the plaintiff's antitrust violations. Further, the court noted that the plaintiff's communications with the defendants' customers was lawful pre-litigation communication protected under the Noerr-Pennington doctrine and that the defendants had not shown that these enforcement activities were undertaken in bad faith.

2005 U.S. Dist. LEXIS 6820, *

**OUTCOME:** Plaintiff's motion to dismiss the defendants' counterclaims was granted in its entirety.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
[HN1] *Fed. R. Civ. P. 56(c)* provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In evaluating the record to determine whether there is a genuine issue as to any material fact, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.

*Antitrust & Trade Law > Private Actions > Injuries & Remedies > General Overview*
[HN2] A plaintiff alleging an antitrust violation must demonstrate both "antitrust injury" and "antitrust standing." Antitrust injury involves more than mere injury to the plaintiff. The plaintiff's injury must be the type of injury that the antitrust laws were intended to prevent and must be caused by the defendant's unlawful actions. The injury must be caused by the anticompetitive effects of the antitrust violation itself or by anticompetitive acts made possible by the violation. Injuries that result from competition in a free-flowing market are not antitrust injuries.

*Antitrust & Trade Law > Private Actions > Injuries & Remedies > General Overview*
*Antitrust & Trade Law > Private Actions > Standing > Requirements*
*Civil Procedure > Justiciability > Standing > General Overview*
[HN3] Antitrust injury alone is insufficient to demonstrate antitrust standing. Because Congress did not intend for every person who was "tangentially affected" by an antitrust violation to have a private right to sue

under the antitrust laws, antitrust standing requires the court to balance the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them. The plaintiff must show injury-in-fact (i.e. that it was injured because of the anticompetitive actions of the defendant), and that it is a proper party to bring suit under the antitrust laws. Additional factors to be considered include the directness or indirectness of the asserted injury, the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement, the speculativeness of the alleged injury, and the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recovery.

*Antitrust & Trade Law > Exemptions & Immunities > Noerr-Pennington Doctrine > General Overview*
*Antitrust & Trade Law > Industry Regulation > Transportation > Railroads*
[HN4] Under the Noerr-Pennington doctrine, one who petitions the court for relief that has the effect of restricting competition is immune from antitrust liability.

*Patent Law > Infringement Actions > Defenses > General Overview*
[HN5] Notice of patent infringement considered by itself cannot be said to be illegal. One of the most basic ownership rights of a patentholder is the right to inform an infringer that it is regarded as an infringer. Therefore, pre-litigation "threat letters" are protected activity as "incidents" of litigation.

*Antitrust & Trade Law > Exemptions & Immunities > Noerr-Pennington Doctrine > General Overview*
[HN6] A finding that an antitrust defendant claiming Noerr immunity had probable cause to sue proves irrefutably that the antitrust defendant's activity was not objectively baseless.

*Antitrust & Trade Law > Private Actions > Injuries & Remedies > General Overview*
*Torts > Business Torts > Unfair Business Practices > Elements*
*Torts > Business Torts > Unfair Business Practices > Remedies*
[HN7] Even an act of pure malice by one business

competitor against another does not, without more, state a claim under the federal antitrust laws; these laws do not create a federal law of unfair competition or purport to afford remedies for all torts committed by or against persons engaged in interstate commerce. Antitrust injury is not synonymous with anticompetitive conduct. Antitrust injury must flow from unlawful anticompetitive conduct causing injury to a relevant market.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Affirmative Defenses > Tolling > General Overview***
***Governments > Legislation > Statutes of Limitations > Extension & Revival***
***Securities Law > Self-Regulating Entities > National Securities Exchanges > New York Stock Exchange***
[HN8] A claim for antitrust violations generally arises as soon as injury to competition occurs. A plaintiff may recover for each individual instance where the defendant's antitrust violations injure the plaintiff's business. The statute of limitations may be tolled where there is a continuing conspiracy by the defendant to violate the antitrust laws. The "continuing violation" theory of tolling the antitrust statute of limitations requires an overt act causing new and independent harm to the plaintiff in order to extend the limitations period.

**COUNSEL:**  [*1]  For U.S. Philips Corporation, U.S. Philips Corporation, Plaintiff: Garrard R. Beeney, Sullivan & Cromwell LLP, New York, NY; Patricia Cyr, Sullivan & Cromwell LLP, Washington, DC.

For Princo Corporation, Princo America Corp., Princo America Corporation, Defendants: Alan Dean Smith, Fish & Richardson, P.C., Boston, MA; David R. Francescani, Jacob Zelmanovitz, Raymond R. Castello, Fish & Richardson, P.C., New York, NY; Eric C. Stops, Pennie & Edmonds, New York, NY; Thomas M. Melsheimer, Fish & Richardson P.C., Dallas, TX.

For Gigastorage Corporation, Gigastorage USA, Movants: Eric C. Stops, Pennie & Edmonds, New York, NY.

For Princo Corporation, Princo America Corp., Counter Claimants: David R. Francescani, Raymond R. Castello, Fish & Richardson, P.C., New York, NY; Eric C. Stops, Pennie & Edmonds, New York, NY; Alan Dean Smith, Fish & Richardson, P.C., Boston, MA.

For U.S. Philips Corporation, Counter Defendant: Garrard R. Beeney, Sullivan & Cromwell, New York, NY.

**JUDGES:** Brieant, J.

**OPINION BY:** Brieant

**OPINION**

***Memorandum and Order***

Brieant, J.

Before the Court are the following motions, filed on October 18, 2004, heard and fully submitted on December 2, 2004: (1)  [*2]  Plaintiff U.S. Philips' ("Philips") motion to dismiss Defendants Princo and Gigastorage's ("Defendants") antitrust claims as time-barred; (2) Philips' motion to dismiss Defendants' antitrust claims based upon lack of antitrust injury, antitrust standing and the application of the *Noerr-Pennington* doctrine, and (3) Philips' motion to bifurcate Defendants' claims of patent misuse and antitrust violations. [1] Opposition papers to these motions were filed on November 9, 2004.

> 1   A separate Memorandum & Order will decide the parties' claim construction, infringement and patent misuse motions.

Familiarity of the reader with all prior proceedings and Court decisions in this matter will be assumed. On January 10, 2002, Plaintiff Philips filed suit against Princo claiming that Princo infringed on six of Philips' patents relating to the manufacture of recordable compact discs ("CD-Rs") and rewritable compact discs ("CD-RWs") and requested a permanent injunction prohibiting any infringement. Princo filed its answer,  [*3]  denying any infringement and raising affirmative defenses, one of which claimed that Philips' patents "are unenforceable by reason of unclean hands and patent misuse." Def's Amended Answer at P4. Princo also asserted one counterclaim for declaratory relief that Philips' patents are unenforceable and several counterclaims for violations of *Sections 1* and *2* of the Sherman Antitrust Act, and *Section 3 of the Clayton Act* seeking damages and injunctive relief, based upon a 1997 disc license.

On June 24, 2002, Philips filed a complaint in the United States International Trade Commission (ITC), Investigation No. 337-TA-474, against nineteen (19) respondents, consisting of four manufacturers and fifteen distributors, claiming that their importation of certain CD-Rs and CD-RWs violated 19 U.S.C. § 337 because they infringed six patents owned by Philips, the same six patents at issue in this action. Philips sought an exclusion order, which prevents further importation in the United States by respondents and others, and a cease and desist order, permitting seizure of infringing discs based on violations of § 337 of the Tariff Act.

On July 26, 2002 the ITC commenced an [*4] investigation based on Philips' complaint. Although Princo was not one of the respondents named in the ITC complaint, nine of the respondents were customers of Princo, and Princo was specifically identified in the complaint as one of the manufacturers which supplied the infringing CD-Rs. On August 14, 2002, Princo was granted leave to intervene in the ITC investigation and subsequently filed its response on September 24, 2002 claiming that it had not violated § 337 because Philips' patents were unenforceable by reason of patent misuse. On September 10, 2002, Princo moved this Court to stay the proceedings in the present action. The motion was unopposed by Plaintiff and granted on October 8, 2002. Among other reasons, Princo argued that its counterclaims in the present action "involve the same issues that are involved in the proceeding before the Commission." Def's Motion to Stay, Aquino Aff. Ex. F at 4. Additionally, Princo's antitrust counterclaims are based on the "same licensing practices [that] form the basis of the defense of unenforceability due to patent misuse that has been asserted by Respondents in the ITC action." Def's Motion to Stay, Aquino Aff. Ex. F at 5.

In the [*5] ITC proceeding, Philips moved to strike Princo's affirmative defense of patent misuse on the grounds that it was based on the same factual allegations as Princo's antitrust counterclaims pending in the action before this Court, and thus would "circumvent the statutory requirement that counterclaims be immediately removed to federal district court." Pl.'s Memo. in Opp. at 7. Philips also contended that "a determination of the patent misuse affirmative defense by the ITC was inefficient because the ITC decision would have no preclusive effect and the same factual and legal issues would be relitigated before this Court after the ITC's investigation was complete." Pl.'s Memo. in Opp. at 7.

Princo responded and argued that a "patent misuse defense is not an antitrust counterclaim." Aquino Aff. Ex. I at 1. Princo asserted also that where there is parallel litigation pending before the ITC and a federal district court,

> issues dependent on common facts, such as declaratory judgment counterclaims on non-infringement and invalidity, are invariably in front of both the Commission and the district court. Such circumstances gave rise to the Federal Circuit's decision in *Texas Instruments Inc. v. United States ITC, 851 F.2d 342, 344 (Fed. Cir. 1988)* [*6] (noting that there is no res judicata effect between a Commission proceeding and a related district court action).

Aquino Aff. Ex. I at 12. On December 11, 2002, the Administrative Law Judge (ALJ) denied Philips' motion to strike Princo's patent misuse defense.

A nine-day hearing was held commencing on June 10, 2003, and concluding on June 20, 2003, at which time both parties had a full and fair opportunity to litigate the issues before the ALJ. On October 24, 2003, ALJ Sidney Harris issued an initial determination, concluding that although the six patents at issue in the ITC investigation were valid and infringed, they were unenforceable due to patent misuse under both the *per se* rule and under the rule of reason. See Castello Decl. Ex A. On November 5, 2003, Philips petitioned for review of the portion of the ALJ's initial determination which found that the asserted patents were unenforceable due to patent misuse. Princo and the other respondents filed a statement requesting the Commission adopt the ALJ's initial determination in its entirety.

On December 10, 2003, the Commission issued a notice, informing the public of its decision to review the ALJ's findings [*7] and conclusions insomuch as they concerned Philips' patent misuse. The Commission issued its final determination in the ITC investigation on March 25, 2004, upholding the ALJ's initial determination that the patents-in-suit were unenforceable because of patent misuse both *per se* and by rule of reason.

On April 13, 2004, Plaintiff Gigastorage filed a complaint against Philips for violation of antitrust laws. In its Complaint, Gigastorage alleged that (1) Philips

unlawfully tied nonessential patents to licenses for essential patents, (2) that Philips was able to use its monopoly powers to charge an unreasonably high royalty rate by virtue of the fact that Philips had discouraged competitors from developing competing products by assuring them that its technology would be licensed at reasonable rates, (3) that Philips had conspired with others to fix the royalty rate for a license under its CD-R License Agreement at approximately 50% of the net sales price of a CD-R disk, and (4) that Philips' actions constituted an illegal restraint of trade.

Philips denied the allegations in Gigastorage's Complaint and filed several counterclaims, claiming that Gigastorage willfully infringed upon [*8] the '209, '493, '401, '825, '856, and '764 patents. Philips requests (1) a finding that Gigastorage has willfully infringed these patents, (2) an order permanently enjoining Gigastorage and Gigastorage USA from further infringing, (3) an award of compensatory damages in an amount to be determined at trial, (4) an award of reasonable attorneys' fees, costs and disbursements, and (5) any and all such relief as the Court finds is appropriate.

[HN1] *Fed. R. Civ. P. 56(c)* provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505, 2513 (1986).*

*Antitrust Injury, Standing, and Noerr-Pennington*

Defendant Princo advanced antitrust [*9] counterclaims under *Sections 1* and *2* of the Sherman Act for price-fixing, a grant back provision [2] in the CD-R license and mandatory royalties for expired patents, and under *Sections 1* and *2* of the Sherman Act and *Section 3 of the Clayton Act* for tying of undesirable patents and tying of CD-R patents. Gigastorage, in its Complaint, brought antitrust claims under *Section 1 of the Sherman Act for* tying, price fixing and illegal restraint of trade, and under *Section 2* for monopolization. Philips asserts that the Defendants have not offered any evidence to

prove a causal connection between Philips' alleged anticompetitive conduct and Defendants' injuries.

> 2    A grant-back provision exists where the licensee is required to "grant-back" to the patentholder any innovation or additional patent that is developed by the licensee within the field of the patentholder's patent.

[HN2] A Plaintiff alleging an antitrust violation must demonstrate both "antitrust injury" and "antitrust standing." Antitrust injury involves more than [*10] mere injury to the plaintiff. *See Balaklaw v. Lovell, 14 F.3d 793, 797 (2nd Cir. 1994).* The Plaintiff's injury must be the type of injury that the antitrust laws were intended to prevent and must be caused by the Defendant's unlawful actions. *See id. at 797.* The injury must be caused by the anticompetitive effects of the antitrust violation itself or by anticompetitive acts made possible by the violation. *See id. at 797.* Injuries that result from competition in a free-flowing market are not antitrust injuries. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488, 50 L. Ed. 2d 701, 97 S. Ct. 690 (1977)* (The antitrust laws are designed to "protect competition, and not competitors.") (quoting *Brown Shoe v. United States, 370 U.S. 294, 320, 8 L. Ed. 2d 510, 82 S. Ct. 1502 (1962)*).

A second requirement to assert an antitrust claim is "antitrust standing." [HN3] Antitrust injury alone is insufficient to demonstrate antitrust standing. *See G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762, 766 (2nd Cir. 1995).* Because Congress did not intend for every person who was "tangentially affected" by an antitrust violation to have a private right to sue under [*11] the antitrust laws, antitrust standing requires the Court to balance "the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *See Assoc. Gen. Contractors of Cal. Inc. v. Cal. State Counsel of Carpenters, 459 U.S. 519, 535, 74 L. Ed. 2d 723, 103 S. Ct. 897 (1983).* [3] The Plaintiff must show injury-in-fact (i.e. that it was injured because of the anticompetitive actions of the Defendant), and that it is a proper party to bring suit under the antitrust laws.

> 3    Additional factors to be considered include "the directness or indirectness of the asserted injury, the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement, the speculativeness of the

alleged injury, and the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recovery." *See Nat. Assoc. of Pharma. Mfrs., Inc. v. Ayerst Labs., 850 F.2d 904, 913 (2nd Cir. 1988)* (quoting *Associated, 459 U.S. at 540-45.)*

[*12] Defendants allege that Philips formed an unlawful patent pool, which caused injury to competition by restricting output. This restricted output prevented innovation and caused injury to market participants. Defendants allege that they have been unable to sell their product competitively because of this anti-competitive behavior. To further its anti-competitive patent pool, Philips entered allegedly into price-fixing arrangements with co-conspirators. These allegations are sufficient to demonstrate antitrust violations causing injury to competition in a relevant market.

The Defendants must demonstrate that Philips' actions caused their injuries. Defendants allege that they were injured when Philips sent "letters, verbally accusing Princo's customers of infringement, and the filing of complaints in the U.S. District Court and with the ITC in 2002. . . ." *See Defs.' Ex. K at 13.* Defendants' expert on damages states that "My analysis of Princo America's sales on an individual customer basis reveals a direct correlation between lost Princo America sales and the filing of Philips' ITC complaint." Princo attributes its losses to pressure by Philips on Princo's customers to stop selling [*13] Princo's CD-Rs as well as the effect of the ITC filing. *See id. at 16* ("These interviews support my analysis that Philips' conduct caused each of these customers [Princo's former customers] to cease purchasing Princo's CD-Rs and CD-RWs. . . ."). Similarly, Gigastorage attributes its lost profits to Philips' "campaign to force distributors, retailers and customers to stop buying CD-R discs from Gigastorage." Additionally, Gigastorage attributes its losses to Philips' termination of its License Agreement. Because of these actions, Princo allegedly lost $ 273.7 million, and Gigastorage allegedly lost $ 46 million.

The conduct which caused Defendants' injuries is not the same conduct which caused injury to competition in the relevant market. These specific acts are alleged to have caused only Defendants' injuries. There is no evidence that these acts caused injury to competition in a relevant market. Defendants fail to raise a genuine issue of fact as to whether they were injured because of injury

to competition caused by Plaintiffs' antitrust violations.

Also, Plaintiff's actions are protected by the *Noerr-Pennington* doctrine. [HN4] Under the *Noerr-Pennington* doctrine, *see* [*14] *Eastern Railroad Presidents Conference et al. v. Noerr Motor Freight, Inc. et al., 365 U.S. 127, 5 L. Ed. 2d 464, 81 S. Ct. 523 (1961)* and *United Mine Workers v. Pennington, 381 U.S. 657, 14 L. Ed. 2d 626, 85 S. Ct. 1585 (1965),* one who petitions the Court for relief that has the effect of restricting competition is immune from antitrust liability. Defendants concede that Philips' filing of lawsuits is protected activity under *Noerr-Pennington, see Defs.' Memo. at 12,* but argue that antitrust liability exists because Philips informed Defendants' customers that it has filed lawsuits and they may be infringing upon Philips' patents. This claim lacks merit because *Noerr-Pennington* protects such conduct. The Supreme Court has held for nearly one hundred years that "patents would be of little value if infringers of them could not be notified of the consequences of infringement. . . [HN5] Such action considered by itself cannot be said to be illegal." *See Virtue v. Creamery Package Mfg., 227 U.S. 8, 37-38, 57 L. Ed. 393, 33 S. Ct. 202, 1913 Dec. Comm'r Pat. 519 (1913).* One of the most basic ownership rights of a patentholder is the right to inform an infringer that it is regarded as an infringer. *See Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 869 (Fed. Cir. 1999).* [*15] Our Court of Appeals has held pre-litigation "threat letters" to be protected activity as "incidents" of litigation. *See Primetime 24 Joint Venture v. NBC, 219 F.3d 92, 100 (2nd Cir. 2000).*

Philips' communications with Defendants' customers was lawful pre-litigation communication. This Court recognizes a patent holder's property interest in its lawful monopoly. *Noerr-Pennington* acknowledges the importance of litigation in pursuing those interests. Because of the excessive transactional costs of litigation, including attorney's fees, loss of a company's good will and other potential risks to business, attempts to resolve claims or disputes by demand letter prior to filing suit are encouraged.

Defendants argue that Philips did not act in good faith because it "knew" that certain patents were nonessential and unenforceable. Also, Defendants argue that when Philips changed its designation of certain patents from "essential" to "non-essential," it did not identify the patents that the ALJ had determined to be

non-essential. We are told that Philips threatened infringers with litigation "in phone calls, at trade shows, and [at] other locations." None of these arguments [*16] change the essential fact that Philips is permitted to protect its property interest in its patents by communicating with alleged infringers and informing them that Philips may pursue litigation if they do not stop their infringing activities.

Defendants' arguments are conclusory and insufficient to overcome the *Noerr-Pennington* presumption that Philips' communications were lawful. Defendants have not offered evidence that Philips' enforcement activities were a sham, or anything other than threatening lawful activity protected by *Noerr-Pennington. See Professional Real Estate Investors v. Columbia Pictures Industries, 508 U.S. 49, 63, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993)* [HN6] (A finding that an antitrust defendant claiming *Noerr* immunity had probable cause to sue proves irrefutably that the antitrust defendant's activity was not "objectively baseless.").

This Court has determined previously that the ALJ's factual findings and legal conclusions are not preclusive in this case. Philips' failure to identify and remove from its list of essential patents those patents that the ALJ concluded to be non-essential is not evidence that Philips has acted in bad faith. Philips is not under a legal obligation [*17] to change its opinion as to which patents are valid and enforceable until such a determination is made in this Court after a plenary trial, and affirmed by the Federal Circuit. Philips' patents did not become unenforceable merely because the ALJ, the District Court of the Hague, and the Taiwan Fair Trade Commission deemed them so. While Philips may have found it wise to consider these Opinions in the exercise of sound business judgment and to avoid litigation, these Opinions do not compel or require the conclusion that attempting to enforce allegedly "unenforceable" patents is *per se* in bad faith. [4] Accordingly, the Court concludes that Philips' conduct in informing Defendants' customers that their conduct infringed upon Philips' patents is protected under *Noerr-Pennington.*

    4   In any event, Philips' subsequent removal of certain patents from its patent list is inadmissible as proof that it tied essential and non-essential patents. *See Fed. R. Evid. 407.*

The final [*18] ground, not argued by Defendants in their Memorandum in opposition but found in their expert's report is that Gigastorage [5] suffered injury when Philips' terminated its License Agreement. [6] Philips terminated this license after Gigastorage failed to pay royalties due under the License Agreement. Gigastorage claims it did not pay these royalties because the royalty rate royalty rate was unlawfully high as a result of Philips' antitrust violations.

    5   This basis, assuming that it is sufficient to satisfy antitrust injury, would only satisfy Gigastorage's requirement. Princo has not alleged this basis.
    6   Defendants are specific in their memorandum about what caused injury. *See Defs.' Memo. at 11-12* ("The evidence also shows that Philips, as a means of furthering its anticompetitive conduct, engaged in selective enforcement of the pool through intimidating personal contacts, phone calls, threatening letters and lawsuits.") While operating a patent pool may be unlawful, the only causal connection attributed by Defendants stems from protected conduct.

[*19] Not every business decision supports liability under the federal antitrust laws. *See Brooke Group v. Brown & Williamson Tobacco Group, 509 U.S. 209, 225, 125 L. Ed. 2d 168, 113 S. Ct. 2578 (1993)* [HN7] ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; these laws do not create a federal law of unfair competition or 'purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'") (internal citation omitted). Antitrust injury is not synonymous with anticompetitive conduct. Gigastorage claims that it was injured when Philips terminated its License Agreement. Its harm therefore flowed from the termination of the agreement. A license termination is not inherently an anticompetitive act. Good cause may exist in fact to take such action. Philips claims that it terminated the license after Gigastorage failed to pay royalties. Such recourse was within its rights under the License Agreement. *See Pl's. Ex. B at P10.05:*

    Philips shall have the right to revoke the license granted in this Agreement and to terminate the same for failure by Licensee to pay the royalties due for [*20] three consecutive quarters of the year, which

revocation shall start upon written notification thereof by Philips sent by certified mail to Licensee, who shall have right to cure such revocation.

Gigastorage's injury flowed from lawful action. Antitrust injury must flow from unlawful anticompetitive conduct causing injury to a relevant market. Accordingly, Gigastorage cannot base a claim of antitrust injury on Philips' lawful termination of the License Agreement due to Gigastorage's failure to pay royalties due under that Agreement. [7]

> 7 Defendants do not have antitrust standing to assert antitrust claims for price-fixing of the discs themselves. *See Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 582-583, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)* (holding that price-fixing does indeed violate the *Sherman Act*, but that a competitor does not have standing to bring a claim because a rise in the price of goods would benefit a seller of those goods).

*Statute of Limitations*

[HN8] A claim for antitrust violations [*21] generally arises as soon as injury to competition occurs. *See Higgins v. New York Stock Exchange, Inc., 942 F.2d 829, 832 (2nd Cir. 1991).* A Plaintiff may recover for each individual instance where the Defendant's antitrust violations injure the Plaintiff's business. The statute of limitations may be tolled where there is a continuing conspiracy by the Defendant to violate the antitrust laws. The "continuing violation" theory of tolling the antitrust statute of limitations requires an overt act causing new and independent harm to the plaintiff in order to extend the limitations period. *See Klehr v. A.O. Smith Corp., 521 U.S. 179, 189, 138 L. Ed. 2d 373, 117 S. Ct. 1984 (1997)* (a continuing violation occurs where an overt act is part of the ongoing violation and injures the plaintiff); *Bankers Trust v. Rhoades, 859 F.2d 1096, 1104 (2nd Cir. 1988)* ("In the context of a continuing antitrust violation with continuing injuries, this has usually been understood to mean that each time plaintiff suffers an injury caused by an illegal act of defendants, a cause of action accrues to plaintiff to recover damages based on that injury.").

The Defendants raise four theories of antitrust [*22] violations: (1) tying; (2) monopolization; (3) price-fixing; and (4) illegal restraint of trade. Defendants assert that "the statute of limitations has not run on Count I [tying]

because Philips has not ended its tying arrangements." *See Defs.' Memo. at 8.* The tying claim arose when the Defendants first entered into a contractual relationship with Philips. This occurred on June 23, 1997 for Princo and October 12, 1999 for Gigastorage. Defendants have not alleged that the continued existence of the tying arrangement is causing them new and independent injury. The continued existence of the contractual arrangement is insufficient to toll the statute of limitations, because merely continuing to offer the license does not constitute a new and independent injury under the antitrust law.

Defendants offer case law arguing that the "overt act" requirement may be satisfied by the continuing contractual relationship between the parties. However, the cases offered by Defendants in support, *Nat'l Souvenir Center, Inc. v. Historic Figures, Inc., 234 U.S. App. D.C. 222, 728 F.2d 503, 510 (D.C. Cir. 1984)* and *KFC Corp. v. Marion-Kay Co., 620 F. Supp. 1160, 1167-68 (S.D. Ind. 1985)*, [*23] are not controlling upon this Court. Defendants have not offered evidence of any overt act committed by Philips during the limitations period which caused them harm and could serve as the basis of an antitrust claim for tying. Accordingly, the Defendants antitrust claim based upon tying is time-barred.

The Defendants next claim that Philips used its monopoly power as part of a conspiracy to extract unlawfully high and anti-competitive royalty rates. Philips argues that this claim is barred because the Defendants have not demonstrated an overt act that could serve to extend the statute of limitations. The only act alleged by Defendants in furtherance of the conspiracy was Philips' decreasing of royalties in 2001. Defendants assert that this act was in furtherance of the conspiracy because it was done in response to falling CD-R disc prices, and that even though the royalty was decreased, the royalty rate as a percentage of a disc's price remained the same.

Defendants have not offered evidence that Philips' lowering of royalties in 2001 caused them new injury. Princo has admitted that it had stopped paying royalties by early 1998. *See Pl's. Ex. 10 at 988-89.* It had stopped paying [*24] royalties because the royalty rate "is like about 60 or 70 percent of the net selling price. It's too high, too high. We cannot keep paying." Similarly, Gigastorage stopped paying royalties in August 2000. *See Pl's. Ex. 9 at 851-52.* Whatever injury was suffered by

the Defendants because of the royalty rate occurred prior to the royalty rate being lowered. As the Defendants had already stopped paying royalties at the time that the royalty rate was lowered, they did not suffer any new injury when Philips allegedly changed the royalty rate to accommodate it to the falling disc prices. Accordingly, Defendants' claim based on monopolization is time-barred.

Defendants' third antitrust claim is for price-fixing. The Court need not consider the timeliness of Defendants' price fixing claim, as the Court has concluded that the Defendants, as competitors of Philips and sellers of CD-Rs, do not have standing to assert this claim.

The Defendants final antitrust claim is for illegal restraint of trade. Defendants allege that Philips' tying arrangements, royalty rates and price-fixing scheme individually and in the aggregate serve to extend the limitations period because they are overt acts [*25] that occurred within the limitations period and restrain trade. Also, the Defendants allege that Philips restrained trade when it contacted Defendants' customers. The Court has concluded that Defendants' claims based upon tying and royalty rate violations are time-barred. The Court has concluded as well that Defendants do not have standing to assert their price-fixing claim. Finally, Philips' actions to protect its patent rights constitute protected conduct under the *Noerr-Pennington* doctrine. The conduct alleged by Defendants does not satisfy the overt act requirement and cannot serve to extend the statute of limitations. Accordingly, Defendants antitrust claim for illegal restraint of trade is time-barred.

1-24-05