1  James E. Doroshow (SBN 112920)
    jdoroshow@foxrothschild.com
2  Patrick J. Hagan (SBN 266237)
    phagan@foxrothschild.com
3  FOX ROTHSCHILD LLP
   1800 Century Park East, Suite 300
4  Los Angeles, CA 90067-1506
   Telephone:  310-598-4150
5  Facsimile:   310-556-9828

6  Attorneys for Defendants,
   KLS DOORS, LLC AND COX U.S.A.

7

8            UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11  THE SLIDING DOOR COMPANY, a
    California Corporation,
12

        Plaintiff,
13

       v.
14

15  KLS DOORS, LLC, a California Limited
    Liability Company; COX U.S.A., a
    division of KLS DOORS, LLC,
16

       Defendants.
17

18

19

20

21

22  KLS DOORS, LLC, a California Limited
    Liability Company; COX U.S.A., a
    division of KLS DOORS, LLC,
23

24        Counter-Plaintiffs.

25       v.

26  THE SLIDING DOOR COMPANY, a
    California Corporation,
27

      Counter-Defendant.
28

Case No.: EDCV 13-00196-JGB-DTB

Hon. Judge Jesus G. Bernal

**OPPOSITION OF DEFENDANTS
KLS DOORS, LLC AND COX U.S.A.
TO PLAINTIFF SLIDING DOOR
COMPANY'S MOTION TO DISMISS
DEFENDANTS' COUNTERCLAIMS;
DECLARATION OF JAMES E.
DOROSHOW**

Date:                April 29, 2013
Time:                9:00 a.m.
Courtroom:        790

Date Complaint Filed:   1/31/13
Discovery Cutoff:        None
Trial Date:               None

KLS & COX'S OPPOSITION TO SLIDING DOOR'S MOTION TO DISMISS

DN1 37045v4 04/08/13               1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION....................................................................... 2

II.   KLS'S COUNTERCLAIMS SHOULD
      NOT BE DISMISSED................................................................ 3

      A.    Applicable Legal Standards......................................... 3

      B.    KLL's Lanham Act Counterclaim (Fourth Claim
            For Relief) Sufficiently Alleges "Commercial
            Advertising".................................................................... 5

      C.    KLS's Unfair Competition Claim (Fifth Claim For
            Relief) Should Also Survive Dismissal........................ 10

            1.    KLS Has Plead An "Unlawful Practice" Under
                  California Unfair Competition Law.................... 10

            2.    The California Litigation Privilege Does Not
                  Provide Absolute Immunity................................ 10

      D.    Plaintiff's Communications Are Not Protected
            Free Speech.................................................................... 11

            1.    Plaintiff Has Not shown That The Noerr-
                  Pennington Applies To Lanham Act Claims...... 11

            2.    The Sham Exception Precludes Dismissal
                  In Any Event...................................................... 12

            3.    KLS's Allegations Also Meet The Bad Faith
                  Exception To The Lanham Act........................... 13

      E.    KLS's Declaratory Judgment Claims (First Through
            Third Claims of Relief) Are Sufficiently Pled And
            Should Not Be Dismissed................................................ 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    1. KLS's Non-Infringing Products Are Clearly
Identified As Plaintiff's Accused Products....... 15

    2. KLS's Counterclaims Should Not Be
Dismissed As Duplicative................................. 15

  F. KLS's Invalidity Counterclaim Is Adequately Pled...... 17

  G. Plaintiff's Attempt To Dismiss KLS's Invalidity
Affirmative Defense Is Also Improper......................... 18

III. CONCLUSION.................................................................... 20

# TABLE OF AUTHORITIES

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
    556 U. S. 662, 129 S. Ct. 1927 ............................................................................4, 13, 18, 19

*Avery Dennison Corp. v. Acco Brands, Inc.,*
    CV99-1877DT (MCX), 2000 WL 986995 (C. D. Cal. Feb. 22, 2000)............................6, 9, 10

*Bank of the West v. Superior Court,*
    2 Cal. 4th 1254 (1992) ..............................................................................................10

*Bell Atlantic Corp. v. Twombly,*
    550 U. S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)........................................3, 4, 18, 19

*Biacore, AB v. Thermo Bioanalysis Corp.,*
    79 F. Supp. 2d 422 (D. DE 1999) ...............................................................................17

*Brillhart v. Excess Ins. Co. of America*
    (1942) 316 U. S. 491.................................................................................................16

*Bureerong v. Uvawas,*
    922 F. Supp. 1450 (C. D. Cal. 1996) ..........................................................................19

*Cardinal Chemical Co. v. Morton Int'l, Inc.*
    (1993) 508 U. S. 83..................................................................................................16

*Coastal Abstract Service v. First Am. Title Ins. Co.,*
    173 F. 3d 725 (9th Cir. 1999) .....................................................................................6

*Concise Oil & Gas Partnership v. Louisiana Intrastate Gas Corp.*
    (5th Cir. 1993) 986 F. 2d 1463 ...................................................................................16

*Daniel v. County of Santa Barbara,*
    288 F. 3d 375 (9th Cir. 2002) .....................................................................................4

*EcoDisc Tech, AG v. DVD Format/Logo Licensing Corp.,*
    711 F. Supp. 2d 1074 (C. D. Cal. 2010) .......................................................................12

*Eureka Fed. Sav. & Loan Ass'n v. American Gas Co.*
    (9th Cir. 1989) 873 F. 2d 229 .....................................................................................16

*Gilligan v. Jamco Development Corp.,*
    108 F. 3d 246 ......................................................................................................3, 4, 13

*Impeva Labs, Inc. v. System Planning Corp.,*
    2012 WL 3647716 (N. D. Cal. Aug. 23, 2012) ...........................................................6, 13-14

KLS & COX'S OPPOSITION TO SLIDING DOOR'S MOTION TO DISMISS

DN1 37045v4 04/08/13                                    iii

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F. 3d 970 (9th Cir. 1999) ...................................................................................4

*Microsoft Corp. v. Phoenix Solutions, Inc.*,
  741 F. Supp. 2d 1156 (C. D. Cal. 2010) ..........................................................17, 18

*Pettrey v. Enterprise Title Agency, Inc.*
  No. 1:05CV1504, 2006 U. S. Dist. LEXIS 83957(N. D. Ohio Nov. 17, 2006).......................17

*Qarbon.com, Inc. v. EHelp Corp.*,
  315 F. Supp. 2d 1046 (NDCA 2004) ...................................................................18

*Raines v. Switch Mfg.*,
  No. C-96-2648 DLJ, 1997 WL 578547 (ND Cal. July 28, 1997)...........................12

*Rescuecom Corp. v. Google*,
  652 F. 3d 123 (2d Cir. 2009).................................................................................3

*Rice v. Fox Broad Co.*,
  330 F. 3d 1170 (9th Cir. 2003) ..............................................................................7

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*
  806 F. 2d 1393 (9th Cir. 1986) ..............................................................................5

*Sears Roebuck & Co. v. Am. Mut. Liab. Ins. Co.*
  (7th Cir. 1967) 372 F. 2d 435 ..............................................................................16

*Sharper Image Corp. v. Target Corp.*,
  425 F. Supp. 2d 1056 (N. D. Cal. 2006) ...............................................................11

*Sherwood Med. Ind., Inc. v. Deknatel, Inc.*
  (8th Cir. 1975) 512 F. 2d 724 ..............................................................................16

*Silverg v. Anderson*
  50 Cal. 3d 205 (1990). ..........................................................................................11

*Silva v. Di Vittorio*,
  658 F. 3d 1090 (9th Cir. 2011) ..............................................................................5

*Societe de Conditionnement v. Hunter Eng. Co., Inc.*
  (9th Cir. 1981) 655 F. 2d 938 ..............................................................................15

*Sosa v. DirectTV, Inc.*,
  437 F. 3d 923 (9th Cir. 2006) ..............................................................................12

*Southland Sod Farms v. Stover Seed Co.*,
  108 F. 3d 1134 (9th Cir. 1997) ..............................................................................5

*State Farm Fire & Cas. Co. v. Superior Court*,
  45 Cal. App. 4th 1093 (1996) ..............................................................................10

*Stickrath v. Globalstar, Inc.*,
  No. 07-1941(TEH), 2008 U.S. Dist. LEXIS 95127 (N.D. Cal. May 13, 2008) ...............16, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U. S. 308, 127 S. Ct. 2499 (2007)...................................................................................4

*Theme Promotions, Inc. v. News Amer. Marketing FSI*,
  546 F. 3d 991 (9th Cir. 2008) ...............................................................................................12

*United States v. Corinthian Colleges*,
  653 F. 3d 984 (9th Cir. 2011) .................................................................................................4

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F. 3d 970 (9th Cir. 2010) ...............................................................................................18

*Zenith Electronics Corp. v. Exzec, Inc.*
  182 F.3d 1340 (Fed. Cir. 1999)................................................................................... 6, 13-14

## STATUTES

28 U. S. C. § 2201(a) ........................................................................................................ 15-16

Section 17200 of the California Business and Professions Code .................................................10

California Civil Code Section 47(b) .................................................................................... 10-11

## OTHER AUTHORITIES

F. R. C. P. 15(a) ...........................................................................................................................4

Fed. R. Civ. P. 8(a)(2)..................................................................................................................3

Fed. R. Civ. P. 8(e) ......................................................................................................................3

Fed. R. Civ. P. 12(b)(6)....................................................................................................3, 4, 9, 18

Fed. R. Civ. P. Rule 57 ...............................................................................................................15

L.R. 7-4 .......................................................................................................................................19

Rule 8 ...........................................................................................................................................3

Rule 8(a)....................................................................................................................................3, 19

Rule 8(b) .....................................................................................................................................19

Rule 8(c).......................................................................................................................................19

Rule 9(b) ................................................................................................................................13, 14

Rule 12(f) ...............................................................................................................................18, 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    **INTRODUCTION.**

Defendants KLS Doors, LLC and Cox U.S.A. (collectively, "KLS") respectfully submit this Opposition to Plaintiff's Motion to Dismiss their Counterclaims ("Motion").  For the reasons discussed below, Plaintiff's Motion should be denied in its entirety.

Prior to filing their Answer and Counterclaim in this action on March 5, 2013 [Dkt. No. 8], KLS's counsel repeatedly requested that Plaintiff's counsel explain the basis for his client's assertion of infringement in an effort to try to explain that Defendants' products do not infringe either the patent-in-suit (*i.e.*, United States Patent No. 7,647,729 B2 ("the '729 Patent") or Plaintiff's asserted trade dress.  *See* Doroshow Decl., ¶ 2, Ex. A.  Plaintiff's counsel totally ignored such requests; instead electing to file the present Motion after Defendants filed their Answer and Counterclaims.  *Id.*  As defense counsel was prepared to explain to Plaintiff's counsel, based on the limited information known to Defendants from Plaintiff's Complaint there is <u>a complete absence of infringement</u>.  Rather than engage in the requested dialogue with counsel to avoid further litigation, Plaintiff's counsel has now instead filed its Motion in an attempt to now try to cut off any further prosecution by KLS of its Counterclaims even though Plaintiff's infringement claims fail.

Plaintiff's actions subsequent to the filing of this suit are particularly disturbing because, notwithstanding the obvious absence of infringement on the face of the Complaint, Plaintiff has contacted KLS's customers not only to advice them of Plaintiff's baseless claims, *but to try to influence their purchasing decisions.*  Contrary to what Plaintiff now argues in its Motion, those communications go far beyond merely reporting that this action had been filed.  Rather, they were made to try to convince Defendants customers to stop doing business with them and to instead purchase products from Plaintiff.  In fact, the E-mail Plaintiff's Business Manager (Todd Schwartz) attaches to his Declaration in Support of Plaintiff's Motion to Dismiss includes a link to Plaintiff's Sales Catalog and Website that Plaintiff

1   conveniently omits from the Declaration.  A copy of the Sales Catalog and Website

2   are now attached to the accompanying Doroshow Declaration as Exhibit B for the

3   Court's review. As shown below, since this is clearly commercial activity, Plaintiff

4   has no blanket immunity for such actions as it now maintains.

5   　　　　Moreover, contrary to Plaintiff's assertions, KLS's Counterclaims are not

6   "thread-bare" and/or "conclusory."  KLS's factual allegations are more than sufficient

7   to support its Counterclaims for purposes of notice pleading and as such, Plaintiff's

8   Motion should be denied.  In any event, even in the unlikely event this Court should

9   determine that there is any merit to Plaintiff's "arguments," Defendants of course

10   should be granted leave to amend given the liberal standards for amendment in ruling

11   on a Fed. R. Civ. P. Rule 12(b)(6) Motion.

12   **II.      KLS'S COUNTERCLAIMS SHOULD NOT BE DISMISSED.**

13   　　　　**A.      Applicable Legal Standards.**

14   　　　　The Ninth Circuit does not favor motions to dismiss under Fed. R. Civ. P.

15   12(b)(6).  *See, e.g.*, *Gilligan v. Jamco Development Corp.*, 108 F. 3d 246, 249 (noting

16   that Rule 8 contains a "powerful presumption against rejecting pleadings for failure to

17   state a claim"(internal quotation omitted)).  "Pleadings must be construed so as to do

18   justice."  Fed. R. Civ. P. 8(e).  Rule 8(a) merely requires "a short and plain statement

19   of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

20   Further, Rule 8(a)(2) is intended to "give the defendant fair notice of what the . . .

21   claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.

22   S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (internal quotation

23   omitted).  *See also Rescuecom Corp. v. Google*, 652 F. 3d 123 (2d Cir. 2009) (the

24   Court must "accept as true all factual allegations set out in plaintiff's complaint, draw

25   inferences from those allegations in the light most favorable to plaintiffs and construe

26   the complaint liberally").

27   　　　　The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded

28   would, if established, support a plausible claim for claim for relief.  In short, all that is

1   required is a showing of facial plausibility. *Ashcroft v. Iqbal*, 556 U. S. 662, 129 S.

2   Ct. 1927, 1949-50.  Thus, no matter how improbable the facts are, they must be

3   accepted as true for purposes of the motion. *Bell Atlantic v. Twombly*, 550 U. S. 544,

4   556 (2007) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's

5   disbelief of a complaint's factual allegations").

6          All well-plead allegations of KLS's Counterclaims must be accepted as true. *In*

7   *re Silicon Graphics Inc. Sec. Litig.*, 183 F. 3d 970, 983 (9th Cir. 1999); *Tellabs, Inc. v.*

8   *Makor Issues & Rights, Ltd.*, 551 U. S. 308, 322, 127 S. Ct. 2499, 2509 (2007).

9   Further, all reasonable inferences from the Counterclaims must be construed in the

10  light most favorable to KLS. *Daniel v. County of Santa Barbara*, 288 F. 3d 375, 380

11  (9th Cir. 2002).  A well pleaded complaint may proceed even if it strikes a savvy judge

12  that actual proof of those facts is improbable, and that a recovery is very remote and

13  unlikely. *Twombly*, 550 US at 556.

14         In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must

15  "contain either direct or inferential allegations respecting all the material elements

16  necessary to sustain recover under some viable legal theory." *Twombly*, 550 U. S. at

17  562.  First, the Court should identify non-conclusory factual allegations in KLS's

18  Counterclaims and then determine whether these allegations, taken as true and

19  construed in light most favorable to KLS, plausibly give rise to an entitlement to

20  relief. *Iqbal*, 129 S. Ct. at 1949.  If they do, dismissal is appropriate. *Id.*

21         In addition, it is not proper to apply an evidentiary standard when considering

22  whether a complaint fails to state a claim. *See Gilligan* at 249 (agreeing with the 8th

23  Circuit that it is not appropriate to measure a complaint "'against a particular

24  formulation of the prima facie case at the pleading state'").

25         Finally, even when a motion to dismiss is granted, as a practical matter, leave to

26  amend is almost always granted by the Court. Fed. R. Civ. P. Rule 15(a) expressly

27  states leave to amend "shall be freely given when justice so requires." F. R. C. P.

28  15(a); *United States v. Corinthian Colleges*, 653 F. 3d 984, 985 (9th Cir. 2011).  In

fact, some courts, including the Ninth Circuit, hold the Court should grant leave to amend even if the plaintiff did *not* request leave to amend, unless it is clear that the complaint cannot be cured by the allegation of different facts. *Silva v. Di Vittorio*, 658 F. 3d 1090, 1105 (9th Cir. 2011). *See also Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.* 806 F. 2d 1393, 1401 (9th Cir. 1986) (leave to amend should be denied only if the court determines that "allegation(s) of other facts consistent with the challenged pleading, *could not possibly cure the deficiency*"). (Emphasis added.)

## B. KLS's Lanham Act Counterclaim (Fourth Claim For Relief) Sufficiently Alleges "Commercial Advertising."

A claim under Section 43(a) of the Lanham Act requires a showing of the following elements:

> 1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
>
> (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
>
> (3) the deception is material, in that it is likely to influence the purchasing decision;
>
> (4) the defendant caused its false statement to enter interstate commerce; and
>
> (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*(Southland Sod Farms v. Stover Seed Co.*, 108 F. 3d 1134, 1139 (9th Cir. 1997).

Here, Plaintiff's challenge to KLS's Lanham Act Counterclaim is focused on the "commercial advertisement" element. (Mot., pp. 5-7.) Thus, Plaintiff argues that

1  KLS has failed to allege that Plaintiff's E-mails constitute a "commercial
2  advertisement."  Plaintiff is wrong.

3  Representations constitute commercial advertising or promotion under the
4  Lanham Act if they are (1) commercial speech; (2) by a defendant in commercial
5  competition with a plaintiff; (3) for the purposes of influencing consumers to buy
6  defendant's goods or services; (4) which need not be in a classic advertising
7  campaign, but which are (5) determined to be sufficiently relevant to the purchasing
8  public, to constitute "advertising" or "promotion" within the industry.  *Coastal*
9  *Abstract Service v. First Am. Title Ins. Co.*, 173 F. 3d 725, 735 (9th Cir. 1999).  Here,
10  the statements in Plaintiff's E-mails readily satisfy this five-part criteria.

11  Indeed, Plaintiff is overreaching by incorrectly contending that *all*
12  *communications* asserting a claim of alleged intellectual property infringement cannot
13  constitute "commercial advertising" as a matter of law under the Lanham Act.  (Mot.,
14  p. 5.)  However, no such bright-line test or absolute immunity exists.  *Avery Dennison*
15  *Corp. v. Acco Brands, Inc.*, CV99-1877DT (MCX), 2000 WL 986995, *7 (C. D. Cal.
16  Feb. 22, 2000) (acknowledging that the Supreme Court has not created bright line-
17  rules in this area).  Rather, courts have analyzed such communications *on a case-by-*
18  *case basis, looking instead at the content and nature of each communication.  Acco*,
19  *7 (noting the Ninth Circuit's directive to examine disputed communications in light
20  of their surrounding circumstances to make a "commercial advertising"
21  determination).  Indeed, there are numerous instances in which communications
22  involving assertions of patent infringement have survived motions to dismiss as viable
23  Lanham Act claims.  *See e.g.*, *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F. 3d 1340
24  (Fed. Cir. 1999) (affirming District Court decision denying motion to dismiss
25  involving communications of infringement and claims suggesting defendant could not
26  design around patent); *Impeva Labs, Inc. v. System Planning Corp.*, 2012 WL
27  3647716, *5 (N. D. Cal. Aug. 23, 2012) (denying a motion to dismiss and allowing a
28

Lanham Act claim to proceed based on false statements to customers about alleged infringement of patent by claimant's products).

KLS of course agrees that the alleged communications must be made "for the purpose of influencing consumers to buy [Plaintiff's] goods or services." *Rice v. Fox Broad Co.*, 330 F. 3d 1170, 1181 (9th Cir. 2003). Here, however, an examination of Plaintiff's E-mails reveals exactly that. While Plaintiff casts its communications as mere "cease and desist" letters, in fact they are clearly much more. KLS specifically pled as much in its Counterclaims.[1] For example, KLS's Fourth Claim states, in relevant part:

> 26. Upon information and belief, in early February of 2013, Sliding Door engaged in an advertising campaign designed to deter customers from purchasing Counter-Plaintiffs' products by making false statements about the nature, characteristics and/or qualities of Counter-Plaintiffs' products (*i.e.*, certain of their products infringe Sliding Door's '729 Patent).
>
> 27. For example, on February 6, 2013, Todd Schwartz, the Sales Manager of the Commercial Division of Sliding Door, sent a generic, unprivileged, communication in interstate commerce to one of Counter-Plaintiffs' customers, Frontier Door & Cabinet ("Frontier"), that contained the following false statements: "We write to advise that <u>KLS Doors, LLC</u> and its subsidiary <u>COX USA</u> are infringing on our patent….At issue is the COX product line *Urban Door Collection*. This infringing line of products utilizes a top

---

[1] While Plaintiff acknowledges the legal requirement that its communications must have been disseminated sufficiently to the relevant purchasing public, it does not contest this element has been adequately pled. *See* Mot. at p. 3. As such, this Court should obviously construe Plaintiff's silence on this issue as acquiesce that this element has been met or is not at issue in this Motion.

1    and bottom track rolling and locking system that is patented

2    and exclusive to TSDC."

3    28.    Neither Counter-Plaintiffs nor their products have

4    infringed Sliding Door's '729 Patent and as such, both are

5    false statements. Sliding Door's claims of infringement are

6    objectively baseless as evidenced, for example, by the

7    photographs in Paragraph 30 of Sliding Door's Complaint,

8    which clearly show that Counter-Plaintiffs' products are

9    missing fundamental, required elements of every claim of

10   the '729 Patent.

11   29.    In addition to the above-referenced false statements,

12   upon information and belief, *the February 6, 2013*

13   *advertisement included a link for the recipient to view*

14   *Sliding Door's "Digital Catalog" of products and provided*

15   *several pictorial examples of their product lines.*

16   30.    Upon information and belief, other purchasers of

17   Counter-Plaintiffs' products (*e.g.*, architects, sub-contractors

18   and general contractors) in the Seattle area *received the*

19   *same commercial advertising in an attempt to divert sales*

20   *from Counter-Plaintiffs to Sliding Door*.

21   (Counterclaims, ¶¶ 26-30) (emphasis supplied).

22   As shown *supra,* and as now confirmed by the Declaration he has submitted in

23   support of Plaintiff's Motion, these generic, mass communications were sent by the

24   person (Todd Schwartz) responsible for increasing Plaintiff's sales - its Sales Manager

25   for its Commercial Division. (Mot., Ex. 1; Counterclaims, ¶ 27.)  They were not

26   addressed to a particular contact but rather the salutations generically-referenced

27   particular customers (*e.g.*, Frontier Door & Cabinet), further emphasizing Plaintiff

28   was more interested in a mass advertisement than a particular cease and desist letter.

1  (*Id.*, Counterclaims, ¶ 27.)  The E-mails also took the opportunity to inform

2  consumers that KLS was allegedly infringing Plaintiffs' patent using technology that

3  was allegedly "exclusive" to Plaintiff and they also falsely suggested that KLS could

4  not have designed around Plaintiff's patent.  (*Id.*)  Perhaps most significantly, the E-

5  mails did not simply describe the current suit nor were they sent by Plaintiff's counsel,

6  both of which are important factors that Courts have considered when evaluating

7  whether alleged communications are "commercial advertisements."

8        Most importantly, the E-mails prominently presented *an active link to*

9  *Plaintiff's website and commercial catalog.*  (Mot., Ex. 1; Counterclaims, ¶ 29.)[2]  The

10  link includes a picture of Plaintiff's products and invites the reader to "View The

11  Digital Catalog."  (*Id.*)  The E-mail also includes three more pictures of Plaintiff's

12  products. (*Id.*)  As such, there can be no questions that Plaintiff's E-mails are

13  "commercial advertising."

14        Plaintiff's referenced authority does not transform its communications from

15  "commercial advertisements" to mere cease and desist letters.  Indeed, the only cited

16  decision from this District is easily distinguished.  Thus, in *Avery Corp.*, the matter

17  was decided *after discovery and in the context of a summary judgment motion*, which

18  of course employs a different standard than that used in conjunction with a Rule

19  12(b)(6) motion to dismiss.  *Avery Dennison Corp. v. Acco Brands, Inc.*, CV99-

20  1877DT (MCX), 2000 WL 986995, at *1-9 (C. D. Cal., Feb. 22, 2000).  Unlike in the

21  present case, an *attorney* issued traditional cease and desist letters that were clearly

22  not aimed at influencing customers to buy any of Avery's goods.  *Avery Dennison*

23  *Corp. v. Acco Brands, Inc.*, CV99-1877DT (MCX), 2000 WL 986995, at *8-9 (C. D.

24  Cal., Feb. 22, 2000).  Here, by contrast, Plaintiff in the instant matter went far beyond

25  merely informing potential customers of the lawsuit.  Rather, Plaintiff's Sales

26  Manager contacted specific buyers and offered pictures and a link to their commercial

27  _____

28  [2]  As noted, in his Declaration attaching his February 6, 2013 E-mail, Mr. Schwartz
conveniently fails to attach Plaintiff's Website or Sales Catalog, which are linked to or
referenced in his E-mail. *See* Doroshow Dec., Ex. B.

1   catalog of products in a clear attempt to influence their purchasing decisions.  (Mot.,

2   Ex. 1; Counterclaims, ¶¶ 27-29.)  Thus, unlike in *Avery*, Plaintiff's communications

3   were not merely "cease and desist" letters.  Accordingly, KLS's allegations that the E-

4   mails are "commercial advertisements" are more than sufficient to support

5   Defendants' Lanham Act Counterclaim.

6       **C.   KLS's Unfair Competition Claim (Fifth Claim For Relief) Should**

7             **Also Survive Dismissal.**

8             **1.   KLS Has Plead An "Unlawful Practice" Under California**

9                   **Unfair Competition Law.**

10      Plaintiff also incorrectly asserts that KLS cannot state a claim for "unlawful

11  practices" under Section 17200 of the California Business and Professions Code

12  ("UCL claim") because the Court should purportedly dismiss KLS's Lanham Act

13  claim as a possible predicate act.  As shown above, however, Plaintiff is incorrect

14  about the adequacy of KLS's Lanham Act claim, which is incorporated by reference

15  into KLS's UCL claim.  (Counterclaims, ¶ 35.)  In fact, Business and Professions

16  Code § 17200 broadly prohibits any "unlawful, unfair or fraudulent business act or

17  practice" and any "unfair, deceptive, untrue or misleading advertising."  Statutory

18  unfair competition differs from common law unfair competition in California in that a

19  statutory claim extends to *all unfair and deceptive business practices*; does not require

20  a plaintiff to prove damages as a result of a defendant's actions; and, in fact, does not

21  even require the plaintiff to prove there was any competition or rivalry with the

22  defendant.  *See State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093,

23  1105 (1996); *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992).  Since

24  KLS's Lanham Act claim survives, its UCL claim should also survive as well.

25            **2.   The California Litigation Privilege Does Not Provide Absolute**

26                  **Immunity.**

27      Plaintiff also argues that KLS's Unfair competition Counterclaim is allegedly

28  barred as a matter of law by the California litigation privilege.  California Civil Code

1  Section 47(b) provides that communications made or related to judicial proceedings

2  are immune from tort liability.  However, "[t]he litigation privilege applies [only] to . .

3  . communications (1) made in a judicial proceeding; (2) by litigants or other

4  participants authorized by law; (3) *to achieve the objects of the litigation*; (4) *that have*

5  *some connection or logical relation to the action*."  *Sharper Image Corp. v. Target*

6  *Corp.*, 425 F. Supp. 2d 1056, 1077 (N. D. Cal. 2006) (*citing Silberg v. Anderson*, 50

7  Cal. 3d 205, 213 (1990)) (emphasis supplied).

8      Here, as shown, *Plaintiff's E-mails were not made solely to achieve the objects*

9  *of the litigation; but rather to achieve the purpose of providing false information to*

10 *customers in the relevant market regarding the parties' respective products and to*

11 *influence their purchasing activity*.  This is clearly evident from the fact that

12 Plaintiff's Sales Manager (Todd Schwartz) has attached a link to his false

13 communications inviting Defendants' customers to view Plaintiff's website and their

14 competing products.  *This has absolutely nothing to do with the objects of the*

15 *litigation, but to promote business pure and simple through the means of false*

16 *advertising*.  Like KLS's Lanham Act Counterclaim, the mere fact that there is (albeit

17 unmeritorious) litigation pending between the parties does not allow Plaintiff the right

18 to engage in false and illegal advertising about its products merely by including its

19 advertising coupled with statements about the litigation.  For these reasons, KLS's

20 Unfair Competition Counterclaim is also properly pled and should not be dismissed.

21      **D.   Plaintiff's Communications Are Not Protected Free Speech.**

22      Plaintiff also tries to convince this Court that its false statements supporting

23 KLS's Lanham Act and UCL claims are protected free speech under the *Noerr-*

24 *Pennington* Doctrine.  (Mot., p. 10.)  Again, Plaintiff misses the mark.

25      **1.   Plaintiff Has Not Shown That The *Noerr-Pennington* Applies**

26           **To Lanham Act Claims.**

27      The *Noerr-Pennington* doctrine originally arose in the antitrust context and

28 generally relates to protecting those petitioning any department of the government for

---

KLS & COX'S OPPOSITION TO SLIDING DOOR'S MOTION TO DISMISS

1   redress from suit. *Theme Promotions, Inc. v. News Amer. Marketing FSI*, 546 F. 3d
2   991, 1006-7 (9th Cir. 2008).  While expanded to state law tort claims, neither the
3   Supreme Court nor the Ninth Circuit has specifically addressed the applicability of
4   this doctrine to claims under Section 43(a) of the Lanham Act. *EcoDisc Tech, AG v.*
5   *DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1084 (C. D. Cal. 2010).
6   Plaintiff primarily relies on the *Theme Promotions* decision in support of its *Noerr-*
7   *Pennington* argument, but this case involved state law tort claims, not federal Lanham
8   Act claims.  As such, it is inapposite. *Theme Promotions* at 1007.  Thus, Plaintiff's
9   *Noerr-Pennington* argument fails on this ground alone.

10          **2.      The Sham Exception Precludes Dismissal In Any Event.**

11          Even if the *Noerr-Pennington* Doctrine were applicable to Plaintiff's
12   complained-of communications, it is at best a *qualified privilege* that is defeated upon
13   a showing of bad faith by Plaintiff (*i.e.*, the sham exception). *Noerr-Pennington*
14   immunity is not a shield for petitioning conduct that, although ostensibly directed
15   toward influencing government action, is a mere sham to cover what is actually
16   nothing more than an attempt to interfere directly with the business relationship of a
17   competitor. *See Sosa v. DirectTV, Inc.*, 437 F. 3d 923, 935 (9th Cir. 2006). *See also*
18   *EcoDisc Tech, AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074,
19   1082-1083 (C. D. Cal. 2010).  Plaintiff does not dispute this; nor could it. (Mot., pp.
20   11-12.)  Recognizing this exception to *Noerr-Pennington* immunity, Plaintiff instead
21   argues that KLS purportedly has not adequately pled allegations supporting a sham
22   exception to the doctrine. (Mot., pp. 11- 12.)  However, KLS's allegations of bad
23   faith are clearly more than adequate here. *Raines v. Switch Mfg.*, No. C-96-2648 DLJ,
24   1997 WL 578547, at *6 (ND Cal. July 28, 1997) (allowing claim to survive even
25   though no specific facts showing bad faith were alleged).

26          Here, KLS squarely alleges that "Sliding Door's infringement claims are
27   *objectively baseless* as evidenced, for example, by the photographs in Paragraph 30 of
28   Sliding Door's Complaint, which clearly shows that Counter-Plaintiff's products are

1  missing one or more fundamental, required elements of all claims of the '729 Patent."

2  (Counterclaims, ¶ 28) (emphasis supplied). Further, KLS alleges that Plaintiff's

3  communications include numerous other *false and baseless statements* designed to

4  interfere with KLS's relationship with its customers or potential customers, including

5  how KLS is allegedly infringing Plaintiff's patent; KLS's Urban Door Collection

6  product line allegedly infringes Plaintiff's patent; KLS's product line allegedly uses

7  technology that is owned "exclusively" by Plaintiff, and implying that KLS could not

8  allegedly design around Plaintiff's patent. (Counterclaims, ¶ 27.) *See also id.* at ¶ 30

9  (alleging how other purchasers or potential purchaser (*e.g.*, architects, sub-contractors,

10  and general contractors) have received the same *baseless* commercial advertising in an

11  attempt to divert sales from KLS to Plaintiff).

12        At this stage, KLS need not present evidence of its Lanham Act claim. *Gilligan*

13  at 249. Rather, it must merely plead factual allegations demonstrating a plausibly

14  viable claim, which it has clearly done here. *Iqbal* at 1949-50. As such, since there is

15  no absolute blanket immunity, KLS has more than met its pleading burden enabling it

16  to proceed with these claims.[3]

17        **3.    KLS's Allegations Also Meet The Bad Faith Exception To The**

18            **Lanham Act.**

19        While the *Noerr-Pennington* Doctrine is not applicable to Lanham Act claims,

20  some Courts have held that Lanham Act claims arising in a patent infringement

21  context require an additional showing of "bad faith" in order to be actionable. *Zenith*

22  at 1353. However, it is not settled whether such claims must be pled subject to the

23  special pleading requirements of Rule 9(b). *Impeva Labs, Inc. v. System Planning*

24

25  [3]  Inexplicably, Plaintiff argues that KLS has allegedly "admit[ted] they designed their products with the '729 Patent in mind[,]" suggesting that this is somehow an

26  admission of willful infringement. In fact, KLS has simply alleged that "they were aware of [Plaintiff's] patent at the time they designed around it." (Answer, ¶ 24.)

27  This is obviously not an admission of liability: Quite the contrary, people design around patents all the time. *Id.* As such, it certainly has no bearing on the

28  applicability of the sham exception to the *Noerr-Pennington* doctrine in this or in any other case.

1   *Corp.*, 2012 WL 3647716, *5 (N.D. Cal. Aug. 23, 2012). There is no bright-line rule

2   and cases are decided on a case-by-case basis. *Zenith*, p. 1354. Nonetheless, KLS's

3   allegations of bad faith meet even the heightened standard of Rule 9(b) because they

4   state with particularity the circumstances which give rise to its claim of bad faith in

5   this action.

6        This case is very similar to *Zenith Electronics Corp.,* in which the Federal

7   Circuit found that statements about a defendant's products infringing the plaintiff's

8   patents and statements suggesting that defendants could not design around plaintiff's

9   patents could sustain a Section 43(a) Lanham Act claim if made in bad faith. *Zenith* at

10   1354.

11        Here, KLS's allegations are not conclusory. Rather, KLS describes the who,

12   what, when, and how pertaining to Plaintiff's bad faith actions. As in *Zenith*,

13   Plaintiff's E-mails to customers and potential customers in the form detailed in

14   Paragraphs 27-29 of KLS's Fourth Counterclaim (which Plaintiff readily admits

15   sending), went beyond merely informing customers of the pending lawsuit. Rather,

16   they stated that KLS was infringing its patent and using technology that was

17   supposedly "exclusive" to Plaintiff. (Counterclaims, ¶ 27.) Both statements were

18   false and objectively baseless given that Plaintiff's own photographs in the Complaint

19   show that at least one required element of the patent claims is clearly missing from

20   KLS's products. (*Id.* at ¶ 28.) In short, KLS has pled more than enough information

21   to establish "bad faith" for purposes of defeating Plaintiff's Motion.

22      **E.**   **KLS's Declaratory Judgment Claims (First Through Third Claims**

23            **of Relief) Are Sufficiently Pled And Should Not Be Dismissed.**

24        Plaintiff also argues that KLS's First and Third Claims purportedly fail to state

25   claims because they do not identify the products that are non-infringing. (Mot., p. 14.)

26   It also argues that those Counterclaims are needlessly duplicative of Sliding Door's

27   claims and should therefore be dismissed as unnecessary. (*Id.*) Both arguments are

28   flawed.

1       **1.**   **KLS's Non-Infringing Products Are Clearly Identified As**

2          **Plaintiff's Accused Products.**

3       At this stage, as shown, KLS is only required to provide notice to Plaintiff of its

4 claims, which it has clearly done here.  Plaintiff's assertion that it does not know

5 which non-infringing products are at issue is disingenuous at best.  The products that

6 KLS claim are non-infringing in its First and Third Claims are precisely the same

7 products that Plaintiff claims are infringing.  (*See, e.g.*, Complaint, ¶¶ 26, 30.)  In fact,

8 KLS specifically references in its  First Counterclaim that Plaintiff brought suit

9 against KLS and specifically refers to Plaintiff's Complaint.  (Counterclaims, ¶¶ 8-

10 12.)  KLS's Third Counterclaim incorporates these same prior allegations by reference

11 so there can be no confusion as to what products Plaintiff has accused Defendants of

12 infringing its trade dress.  (Counterclaims, ¶ 14.)

13       As such, KLS has clearly satisfied any notice pleading requirement at this stage.

14 Plaintiff cannot have it both ways.  It cannot rest on the claim that it has sufficiently

15 pled its own claims of infringement, but then attack KLS's Counterclaims for relying

16 on the same allegations to support its Declaratory Judgment Counterclaims as

17 somehow confusing or ambiguous.  KLS has provided more than sufficient notice of

18 the products-at-issue in its claims by cross-referencing Plaintiff's allegations of

19 infringement, and as such, its Counterclaims should stand.

20       **2.**   **KLS's Counterclaims Should Not Be Dismissed As Duplicative.**

21       Federal law permits a party to seek declaratory relief where, as here, there is "a

22 case of actual controversy within its jurisdiction."  28 U. S. C. § 2201(a).  Under Fed.

23 R. Civ. P. Rule 57, "[t]he existence of another adequate remedy does not preclude a

24 declaratory judgment that is otherwise appropriate."

25       Declaratory relief is commonly sought in a patent infringement action.  *See e.g.,*

26 *Societe de Conditionnement v. Hunter Eng. Co., Inc.* (9th Cir. 1981) 655 F. 2d 938,

27 943 (claims for patent infringement are "indisputably appropriate" for declaratory

28 relief otherwise competitors might have no practical resource other than to pay

1  whatever royalty was demanded); *Cardinal Chemical Co. v. Morton Int'l, Inc.* (1993)

2  508 U. S. 83, 94 (competitor facing infringement claims can clear the air by suing for

3  a judgment that a patent is invalid otherwise competitors would face an "*in terrorem*

4  choice between incurrence of growing potential liability for patent infringement and

5  abandonment of their enterprise").

6      Here, there can be no question that the case or controversy requirement has

7  been met.  Indeed, Plaintiff has sued KLS for infringing the very patent (and trade

8  dress) for which declaratory relief is sought.  The only additional question raised by

9  Plaintiff's Motion is whether this Court should dismiss KLS's Declaratory Relief

10  Counterclaims as duplicative of the claims or defenses already raised by Plaintiff's

11  Complaint and KLS's Affirmative Defenses.

12      While the Declaratory Judgment Act (28 U. S. C. § 2201) says that courts may

13  declare rights, this is discretionary.  *Brillhart v. Excess Ins. Co. of America* (1942) 316

14  U. S. 491, 494.  In exercising its discretion, however, courts consider a number of

15  different factors, including whether a judgment will "serve a useful purpose in

16  clarifying and settling the legal relations in issue," and "terminate and afford relief

17  from the uncertainty, insecurity and controversy giving rise to the proceeding." *See*

18  *Concise Oil & Gas Partnership v. Louisiana Intrastate Gas Corp.* (5th Cir. 1993) 986

19  F. 2d 1463, 1471; *Eureka Fed. Sav. & Loan Ass'n v. American Gas Co.* (9th Cir. 1989)

20  873 F. 2d 229, 231.  Finally, Courts have held the Act should be construed liberally to

21  effectuate its purpose to afford relief from uncertainty and insecurity with respect to

22  legal relations; and it should not be interpreted in a narrow, tutorial sense.  *Sears*

23  *Roebuck & Co. v. Am. Mut. Liab. Ins. Co.* (7th Cir. 1967) 372 F. 2d 435; *Sherwood*

24  *Med. Ind., Inc. v. Deknatel, Inc.* (8th Cir. 1975) 512 F. 2d 724.

25      Contrary to what Plaintiff argues, here: "It is not always appropriate to strike

26  declaratory judgment counterclaims simply because they concern the same subject

27  matter or arise from the same transaction as the complaint." *See Stickrath v.*

28  *Globalstar, Inc.*, No. 07-1941(TEH), 2008 U.S. Dist. LEXIS 95127, at *4 (N.D. Cal.

1    May 13, 2008) (*citing Pettrey v. Enterprise Title Agency, Inc.*, No. 1:05CV1504, 2006

2    U. S. Dist. LEXIS 83957, at *3 (N. D. Ohio Nov. 17, 2006)). Courts should focus on

3    whether the counterclaims "serve any useful purpose." *Id.* Here, KLS's

4    Counterclaims clearly serve a "useful purpose."

5        In fact, given the fact that its claims are baseless, and Plaintiff's counsel has

6    refused to discuss them at an early stage of these proceedings, Plaintiff may seek to

7    dismiss its own claims without prejudice when it realizes it cannot show infringement.

8    Doroshow Decl., Ex. A. Thus, Defendants' declaration of non-infringement claims

9    serve the useful purpose of providing certainty to KLS that the Court will make a final

10   and binding determination that its accused products do not infringe Plaintiff's patent.

11   *See, e.g., Biacore, AB v. Thermo Bioanalysis Corp.*, 79 F. Supp. 2d 422, 454 (D. DE

12   1999) (recognizing that a counterclaim of non-infringement may proceed even if the

13   patentee dismisses its charge of infringement).

14       Moreover, contrary to Plaintiff's assertions, KLS's Third Counterclaim is not

15   "merely the flipside of Sliding Door's . . . second [cause] of action." (Mot., p. 14.)

16   KLS's Counterclaim alleges that Plaintiff's asserted trade dress is functional,

17   commonly found in third party products, not inherently distinctive, and has not

18   acquired secondary meaning, among other things. (Counterclaims, ¶¶ 20-21.) Such

19   issues also go toward the validity of Plaintiff's alleged trade dress. Courts have found

20   that declaratory judgment claims of invalidity also serve a "useful purpose." *Stickrath*

21   at *4. Accordingly, KLS's First through Third Declaratory Judgment Counterclaims

22   should not be dismissed as duplicative in a proper exercise of this Court's discretion.

23       **F.**   **KLS's Invalidity Counterclaim Is Adequately Pled.**

24       Plaintiff also argues that KLS's Second Counterclaim of Invalidity of Plaintiff's

25   Patent does not have sufficient specificity. However, it would be incongruous to

26   require heightened pleading for invalidity counterclaims when the pleading standard

27   for infringement itself does not require such specificity. *Microsoft Corp. v. Phoenix*

28   *Solutions, Inc.*, 741 F. Supp. 2d 1156, 1159 (C. D. Cal. 2010). The heightened

1    pleading standards of *Twombly* and *Iqbal* do not apply because it would, in effect,

2    require KLS to provide the equivalent of invalidity contentions at the pleading stage.

3    Such a heightened pleading requirement does not exist in this circumstance.  (*Id.*)

4    Surely Plaintiff has not met such a standard in alleging infringement.  In fact, Plaintiff

5    has purposely avoided any discussion of the grounds supporting its claims of

6    infringement.  Doroshow Decl., Ex. A.

7         Thus, KLS's Second Claim of invalidity has been adequately pled for purposes

8    of notice pleading and should stand.  Should the Court disagree, however, KLS should

9    of course be granted leave to amend as Plaintiff has not argued that there aren't any

10   facts that could cure its alleged deficiency, and leave to amend is liberally granted.

11   *Qarbon.com, Inc. v. EHelp Corp.*, 315 F. Supp. 2d 1046, 1048 (NDCA 2004).

12        **G.**   **Plaintiff's Attempt To Dismiss KLS's Invalidity Affirmative Defense**

13              **Is Also Improper.**

14        It is not until the last page of Plaintiff's Motion that Plaintiff raises KLS's Third

15   Affirmative Defense of Invalidity and argues that it too should be dismissed.  (Mot., p.

16   15.)  Plaintiff's request must also fail for several reasons.

17        First, Plaintiff's Motion was based on KLS's alleged failure to state a claim

18   under Rule 12(b)(6).  (Notice of Motion, p. i ("Plaintiff's motion is made pursuant to

19   Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim…."))  Affirmative

20   defenses, however, are not dismissed pursuant to Rule 12(b)(6), but rather are stricken

21   (if at all) pursuant to Rule 12(f).  Fed. R. Civ. P. 12(f).  There are differing standards

22   for Motions to Dismiss versus Motions to Strike.  *Whittlestone, Inc. v. Handi-Craft*

23   *Co.*, 618 F.3d 970, 974-975 (9th Cir. 2010) (noting that even the standards of

24   appellate review are different- Rule 12(f) motions being reviewed for "abuse of

25   discretion" and Rule 12(b)(6) motions be reviewed *de novo*).

26   ///

27   ///

28   ///

Second, Plaintiff has provided no notice of its intent to file its Motion under Rule 12(f) as required by L.R. 7-4[4] and as such, this part of the Motion should be summarily denied.  This matter was also not addressed before the Motion was filed in violation of the Court's Local Rules.

Third, even if the Court construes Plaintiff's request as a motion to strike under Rule 12(f), it should be denied.  Motions to Strike are disfavored in this District.  *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C. D. Cal. 1996) (noting that "Rule 12(f) are generally 'disfavored' because they are often used as delaying tactics, and because of the limited importance of pleadings in federal practice") (internal quotations omitted).

Plaintiff has also provided no Ninth Circuit authority that applies the heightened standards of *Twombly* and *Iqbal* to affirmative defenses.  Rule 8(b) requires that KLS "state in short and plain terms [its] defenses to each claim asserted against [it]…." Fed. R.Civ.P. 8(b).  Rule 8(c) adds that KLS merely state its affirmative defenses. Fed. R. Civ. P. 8(c).  Unlike under Rule 8(a), which relates to pleading of claims, there is no requirement in either Rule 8(b) or 8(c) that requires KLS to explain how it is "entitled to relief."  Also, unlike in the context of a claim, Plaintiff does not need to respond to KLS's Affirmative Defense.  Therefore, in light of the foregoing, Plaintiff's request to strike KLS's Affirmative Defense should also be denied.

///

///

///

///

///

///

///

---

[4] L.R. 7-4 provides that "[t]he notice of motion shall contain a concise statement of the relief or Court action the movant seeks."

III.   **CONCLUSION**

Plaintiff filed a baseless lawsuit and then proceeded to contact KLS's customers with the clear purpose and desire to influence their purchasing decisions.  Plaintiff went beyond protected commercial free speech and should be held accountable under the Lanham Act for its misconduct.  KLS should be permitted to move forward with all of its claims and Plaintiff's Motion should be denied in its entirety.

Dated:  April 8, 2013                          Respectfully submitted,

                                               FOX ROTHSCHILD LLP


                                   By   /James E. Doroshow/
                                        James E. Doroshow
                                        Patrick J. Hagan
                                        Attorneys for KLS,
                                        KLS DOORS, LLC and COX U.S.A.

KLS & COX'S OPPOSITION TO SLIDING DOOR'S MOTION TO DISMISS

## DECLARATION OF JAMES E. DOROSHOW

I, James E. Doroshow, declare as follows:

1.      I am a partner with the law firm of Fox Rothschild LLP and lead counsel of record herein for Defendants and Counterclaimants KLS Doors, LLC and Cox U.S.A. (collectively "KLS"). Except as otherwise stated, I know the following facts based upon personal knowledge and, if called as a witness, I could and would testify competently thereto.

2.      On February 19, 2013, I sent Plaintiff's counsel (Alex M. Weingarten, Esq.) a letter explaining to him that it was my belief that my clients did not infringe U.S. Patent No. 7,647,729 B2 (the "'729 patent" or "patent-in-suit"). At the same time, I asked Mr. Weingarten to confer with me as to which of KLS's products his client and his office believed infringed the '729 patent, and for what reasons. A true and correct copy of my February 19, 2013 letter is attached hereto as Exhibit A. I have never received a substantive response from Mr. Weingarten or anyone else from his office to this request as of the date of submitting this Declaration in Opposition to Plaintiff's Motion to Dismiss.

3.      While Todd Schwartz attaches to his March 29, 2013 Declaration a copy of what he states to be his "complete February 6, 2013 email to Frontier" (as Exhibit 1), Mr. Schwartz fails to include with this Exhibit the link to his company's website referenced at the bottom of the email. In fact, when one clicks on the link on the words "VIEW THE DIGITAL CATALOG" Plaintiff's Catalog appears, a true and correct copy of which is attached hereto as Exhibit B. A copy of Plaintiff's referenced website is also included as Exhibit B.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed in Los Angeles, California on April 8, 2013.

/James E. Doroshow/___
James E. Doroshow