UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | **EDCV 13-00196 JGB (DTBx)** | Date | May 1, 2013 |
|---|---|---|---|
| Title | *The Sliding Door Company v. KLS Doors, LLC, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **Order Granting in Part and Denying in Part Plaintiff's Motion to Dismiss Defendants' Counterclaims** (Doc. No. 11) **(IN CHAMBERS)**


## I. BACKGROUND

   Plaintiff, The Sliding Door Company, brings this action against KLS Doors, LLC and COX U.S.A. ("Defendants") alleging that Defendants infringed on Plaintiff's patent for the Sliding Door System.  Defendants filed a counterclaim against Plaintiff for declaratory judgment, false advertising in relation to Plaintiff's communication with potential customers regarding the pending litigation, and unfair competition under the California Business and Professions Code.  Before the Court is Plaintiff's Motion to Dismiss Defendants' Counterclaims (Doc. No. 11).

   The Court has received and considered all papers filed in support of and in opposition to Plaintiff's Motion to Dismiss.  A hearing on this matter took place on April 29, 2013, and all arguments presented have been considered by the Court.  For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion.  The Court (1) GRANTS Plaintiff's Motion to Dismiss Defendants' First, Second, Fourth, and Fifth Claims for Relief; and (2) DENIES Plaintiff's Motion to Dismiss Defendants' Third Claim for Relief.  The Court dismisses Defendants' Second Claim for Relief WITH LEAVE TO AMEND.  Defendants may file an amended counterclaim no later than May 13, 2013.

### A. Plaintiff's Allegations

On January 31, 2013, Plaintiff filed a Complaint (Doc. No. 1) against Defendants alleging the following:

Plaintiff created a sliding door system that provides a smooth and quiet glide with a safety mechanism and design flexibility. (Compl., ¶ 9). Plaintiff manufactures and sells sliding doors incorporating this patented technology including room dividers, closet doors, office partitions, and wall slide doors. (Compl., ¶ 10). On January 19, 2010, U.S. Patent No. 7,647,729 B2 (the "729 Patent") was issued by the United States Patent and Trademark Office ("USPTO") for "Sliding Door System" with Plaintiff as the assignee of the 729 Patent (Compl., ¶¶ 13-14). Plaintiff's Sliding Door System features a distinctive appearance that identify to customers that the origin of the product lies with Plaintiff and allow for unique and non-functional decorative panel arrangement options. (Compl., ¶¶ 19, 21).

Defendants were aware of the 729 Patent. (Compl., ¶ 24). Without any authorization from Plaintiff, Defendants have replicated patented sliding door systems and have used similar names in describing these products. (Compl., ¶ 25). Defendants have imported and sold products including Wardrobe Aluminum Doors, Surface Aluminum Doors, Aluminum Room Dividers, and Aluminum Partitions. (Compl., ¶ 26). Defendants' sliding door systems incorporate Plaintiff's patented safety latch mechanism, upper roller assembly, and removable divider strips. (Compl., ¶ 28). Defendants have also misappropriated Plaintiff's patented mechanism and decorative paneling options. (Compl., ¶¶ 30-31).

### B. Defendants' Allegations

On March 5, 2013, Defendants filed an Answer to the Complaint and Counterclaims. (Doc. No. 8). Defendants' Counterclaim alleges the following:

Beginning in February 2013, Plaintiff engaged in an advertising campaign to discourage customers from purchasing Defendants' products. (Counterclaim, ¶ 26). On February 6, 2013, the Sales Manager of Plaintiff's Commercial Division sent a communication to one of Defendants' customers, Frontier Door & Cabinet ("Frontier"), that contained false statements including the statement that Defendants are infringing on Plaintiff's patent. (Counterclaim, ¶ 27). The February 6, 2013 advertisement included a link for the recipient to view Plaintiff's digital catalog of products and provided several pictorial examples of their product lines. (Counterclaim, ¶ 29). Other purchasers or potential purchasers of Defendants' products also received the same communication in an attempt to influence purchasers' decisions. (Counterclaim, ¶ 30).

### C. Procedural Background

On January 31, 2013, Plaintiff filed a Complaint against Defendants alleging patent infringement, federal trade dress infringement, state trade dress dilution and injury to business

reputation, intentional interference with prospective economic advantage, and unjust enrichment. (See Compl.)  On March 5, 2013, Defendants filed their Answer to Complaint and Counterclaims.  (Doc. No. 8).  Defendants' Counterclaim states causes of action for declaratory relief, false advertising under Section 43(a) of the Lanham Act, and unfair competition under California Business and Professions Code §§ 17200 et seq.  (See Counterclaim)

On March 29, 2013, Plaintiff filed the instant Motion to Dismiss Defendants' Counterclaims ("Motion").  (Doc. No. 11).  Defendants filed their Opposition on April 8, 2013.  (Doc. No. 16).  Plaintiff filed its Reply on April 15, 2013.  (Doc. No. 17).

## II. LEGAL STANDARD[1]

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).   Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556).  Recently, the Ninth Circuit clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

---

[1] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988). In addition, "a court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).

### III. DISCUSSION

**A.     Claims for Declaratory Judgment**

Defendants' First and Third Claims for Relief requests the Court's declaration of non-infringement. (Counterclaim, ¶¶ 7-13, 19-24). Defendants' Second Claim for Relief requests the Court's declaration of invalidity of the 729 Patent. (Counterclaim, ¶¶ 14-18).

**1.     Infringement**

Plaintiff argues that Defendants' claims for declaratory judgment for non-infringement should be dismissed since they (1) fail to allege which of their products are non-infringing and (2) are duplicative claims of Plaintiff's infringement claims. (Mot. at 14-15).

"Declaratory relief is indisputably appropriate in patent cases." Societe de Conditionnement en Aluminium v. Hunter Engineering Co., Inc., 655 F.2d 938, 943 (9th Cir. 1981). Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Eureka Federal Sav. and Loan Ass'n v. American Cas. Co. of Reading, Pa., 873 F.2d 229, 231 (9th Cir. 1989) (quoting Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (9th Cir. 1984)). In addition, "it is not always appropriate to strike declaratory judgment counterclaims simply because they concern the same subject matter or arise from the same transaction as the complaint." Stickrath v. Globalstar, Inc., 2008 WL 2050990, at *4 (N.D. Cal. May 13, 2008) (citing Pettrey v. Enterprise Title Agency, Inc., 2006 WL 3342633, at *3 (N.D. Ohio, Nov. 17, 2006)).

Here, Defendants' request for declaratory judgment for non-infringement of the 729 Patent is duplicative to Plaintiff's first cause of action. (Compare Compl., ¶¶ 32-37 with Counterclaim, ¶¶ 7-13). As such, Defendants' First Claim for Relief does not serve any useful purpose. While it is not always appropriate to strike counterclaims simply because they concern the same subject matter, here, the counterclaim for declaratory judgment for non-infringement of

the 729 patent presents an issue that is already before the Court in Plaintiff's Complaint. Englewood Lending Inc. v. G & G Coachella Investments, LLC., 651 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009). Therefore, Defendants' First Claim for relief is dismissed as it does not serve any useful purpose.

Defendants' Third Claim for Relief seeks declaratory judgment for non-infringement of Plaintiff's federal trade dress under the Lanham Act. (Counterclaim, ¶¶ 19-24). However, unlike Defendants' First Claim for Relief, the Third Claim is not merely the flip side Plaintiff's second cause of action. Defendants' Third Claim alleges that Plaintiffs' "asserted trade dress is functional, commonly found in third party products, not inherently distinctive, and has not acquired secondary meaning, among other things." (Counterclaim, ¶ 21). Therefore, these issues serve the useful purpose of clarifying whether the Plaintiff's trade dress is invalid. Accordingly, the Court finds that Defendants' Third Claim for Relief is appropriate and serves a useful purpose.

### 2. Invalidity

Plaintiff argues that Defendants' claim for declaratory judgment for invalidity of the 729 Patent fails to allege facts showing patent invalidity since it does not state how the requirements of patentability are not met. (Mot. at 15). Defendants argue that at the pleading stage, patent invalidity claims do not fall under the heightened pleading standards of Twombly and Iqbal. (Opp. at 17-18). Courts are split on whether invalidity claims must meet the pleading standards of Twombly and Iqbal. For example, in Microsoft Corp. v. Phoenix Solutions, Inc., 741 F. Supp. 2d 1156, 1159 (C.D. Cal. 2010), the court held that "it would be incongruous to require heightened pleading when the pleading standard for infringement does not require facts such as 'why the accused products allegedly infringe' or 'to specifically list the accused products.'" Id. at 1159. On the other hand, the court in Qarbon.com Inc. v. eHelp Corp., 315 F. Supp. 2d 1046, 1049-51 (N.D. Cal. 2004) held that an affirmative defense or counterclaim for declaratory judgment that merely references these sections of the Patent Act and fails to provide the factual basis for alleging a patent's invalidity is "radically insufficient." Id. at 1049-51.

Since the pleading requirements of Rule 8 are intended to give notice to parties of the allegations against them, this Court agrees with the district courts that require sufficient allegations to give fair notice to the other party. Here, Defendants' Second Claim for Relief does not allege any facts to support its assertion that the 729 Patent is invalid. (See Counterclaim, ¶¶ 14-18). The Counterclaim merely states that Defendants "allege that one or more claims of the 729 Patent are invalid for failure to meet the requirements of patentability." (Counterclaim, ¶ 15). Therefore, Defendants' claim for declaratory judgment of invalidity of the 729 Patent and its companion third affirmative defense are dismissed as they fail to state a claim upon which relief can be granted.

### B. False Advertising Claim Under Section 43(a) of the Lanham Act

#### 1. Commercial Speech

Defendants' Fourth Claim for Relief alleges that Plaintiff engaged in false advertising "in an attempt to improperly divert sales from [Defendants] to [Plaintiffs]" when it contacted customers regarding the pending litigation between the parties. (Counterclaim, ¶¶ 26-30). Defendants specifically allege that Plaintiff's communication contained a link for the recipient to view Plaintiff's digital catalog of products and provided several images containing examples of their product line. (Counterclaim, ¶ 29). Plaintiff contends that its communication regarding Defendants' patent infringement does not constitute "commercial advertising or promotion" under the Lanham Act. (Mot. at 5).

To allege a claim for false advertising under Lanham Act § 43(a)[2], a party must show: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement." Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997). To constitute commercial advertising or promotion under the Lanham Act, representations must be "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods and service; [and] (4) disseminated sufficiently to the relevant purchasing public, to constitute 'advertising' or 'promotion' within that industry." Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999). The representation need not be made in a "classic advertising campaign." Id.

The Supreme Court has held that it would regard commercial speech as an "expression related solely to the economic interests of the speaker and its audience." Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York, 447 U.S. 557, 561 (1980). The Ninth Circuit noted that "[t]he Supreme Court has abstained from creating bright-line rules in this area . . ." United Reporting Pub. v. Cal. Highway Patrol, 146 F.3d 1133, 1137 (9th Cir. 1998). Therefore, "the Ninth Circuit has directed the Court to examine the disputed communication in light of its surrounding circumstances to determine whether it is entitled to the qualified protection accorded to commercial speech. Avery Dennison Corp. v. Acco Brands, Inc., 2000 WL 986995, at *7

---

[2] Lanham Act § 43(a), codified at 15 U.S.C. § 1125(a), provides in pertinent part:
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any ... false or misleading representation of fact, which—
>> (A) ...
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a).

(C.D. Cal. Feb. 22, 2000) (citing United Reporting Pub., 146 F.3d at 1133).

Here, the main contention between the parties is whether Plaintiff's communication to customers or potential customers constituted commercial speech within the meaning of the Lanham Act. The communication at issue is an email sent by Plaintiff to a customer, Frontier Door & Cabinet ("Frontier"), stating that Plaintiff owns the 729 Patent, that Defendants are infringing on Plaintiff's Patent, and warning recipient that it will hold those who purchase any infringing product accountable. (Exh. 1 to Declaration of Todd Schwartz ("Shwartz Decl.")). Examined in light of the surrounding circumstances, the communication can be construed as a commercial advertisement. First, the email was sent by Todd Schwartz, Plaintiff's Sales Manager in the Commercial Division. (Id.) Second, the email included a link to Plaintiff's online catalog with the words "View the Digital Catalog" below the link. (Id.) Third, the email also included images of Plaintiff's product. (Id.) Therefore, the communication can be construed as commercial speech made for the purpose of influencing consumers to buy Plaintiff's goods and services. See Coastal Abstract, 173 F.3d at 735.

While the email communication includes "cease and desist" language as it warns customers that Plaintiff "will continue to aggressively police its intellectual property rights and will hold those who infringe on [its] rights accountable," the communication here is distinguishable from the communication in Avery. In that case, the court found that the letters sent by plaintiff's attorney, on their face were letters that seek "only to inform the customers of the allegations of the lawsuit and to stop the catalog companies from promoting or publishing [defendant's] goods in the allegedly infringing or false advertising packaging." Avery, 2000 WL 986995, at *8. Unlike the letters in Avery that were sent by plaintiff's attorney, the email at issue here was sent by Plaintiff's Sales Manager. While the email at issue here includes language warning customers of using the infringing product as in Avery, it can be construed as seeking to influence customers to buy Plaintiff's product since it was sent by Plaintiff's Sales Manager, includes a link to Plaintiff's online catalog, and contains images of Plaintiff's product. Accordingly, the Court finds that the communication at issue can be construed as commercial advertising or promotion within the meaning of the Lanham Act.

### 2. First Amendment Protection

Under the Noerr-Pennington doctrine, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct. Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006). While the Noerr-Pennington doctrine originated in the antitrust context, the Supreme Court has extended its application to actions outside the antitrust field. Id. at 929-30. "Conduct incidental to a lawsuit . . . falls within the protection fo the Noerr-Pennington doctrine." Theme Promotions, Inc. v. News America Marketing FSI, 546 F.3d 991, 1007 (9th Cir. 2008). Here, while Defendants argue that the Noerr-Pennington doctrine should not be applied to claims arising under section 43(a) of the Lanham Act, Defendants have not pointed to any convincing reason or authority as to why claims under the Lanham Act should not be subject to the Noerr-Pennington doctrine. (See Opp. at 11-12).

Plaintiff contends that the email sent to customers here falls under the Noerr-Pennington doctrine and is, therefore, protected under the First Amendment right to petition. (Mot. at 10). Communications "are sufficiently within the protection of the Petition Clause to trigger the Noerr-Pennington doctrine, so long as they are sufficiently related to petitioning activity." Sosa, 437 F.3d at 935. The communication at issue here is related to the petition activity of filing the suit since it was an email sent to purchasers or potential purchasers notifying them that Plaintiff had sued Defendants for patent infringement and that it would also pursue its intellectual property rights as to "those who purchase any infringing product." (Exh. 1 to Schwartz Decl.) In addition, the email was sent on February 6, 2013, shortly after the lawsuit was filed. (Schwartz Decl., ¶ 3). While the communication can be construed to contain advertising or promotion as discussed above, the Ninth Circuit has noted that "in nearly every instance in which Noerr-Pennington has been applied, including Noerr itself, the petitioning conduct at issue was carried out to further the petitioning party's commercial interests." Sosa, 437 F.3d at 935 n.8. Therefore, Defendants' claim for false advertising under the Lanham Act arise from communication related to the litigation and are barred by the Noerr-Pennington doctrine.

Defendants argue that the sham exception to the Noerr-Pennington doctrine precludes dismissal of Defendants' false advertising claim. The Supreme Court holds that for litigation to fall under the sham litigation exception, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits." Theme Promotions, 546 F.3d at 1007 (citations omitted). Only if the court finds that the litigation is baseless does the court then consider the "litigant's subjective motivation" by analyzing "whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor, through the use of governmental process-as opposed to the outcome of that process-as an anticompetitive weapon." Id. Here, Defendants do not allege facts showing that the lawsuit was objectively baseless to the point that no reasonable litigant could reasonably expect success on the merits. Plaintiff's claim contains sufficient issues of fact to show that its action against Defendant is not objectively baseless. Therefore, the Court finds that the sham exception does not exempt Defendants' claims from the Noerr-Pennington doctrine. Accordingly, Defendants' false advertising claim under section 43(a) of the Lanham Act is dismissed as barred by the Noerr-Pennington doctrine.

C.     **Unfair Competition Claim under California Business and Professions Code**

Plaintiff contends that Defendants' unlawful competition claim is barred by California's litigation privilege. (Mot. at 12-13). Defendants argue that the Plaintiff's communication does not fall under California's litigation privilege since it was made for the purpose of advertising rather than in connection to litigation. (Opp. at 10-11).

California Civil Code Section 47(b) provides that communications made or related to judicial proceedings are immune from tort liability. Cal. Civ. Code § 47(b); Rubin v. Green, 4 Cal. 4th 1187, 1193 (1993). The purpose of the privilege is to "afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." Silberg v. Anderson, 50 Cal. 3d 205, 213 (1990). The litigation privilege applies to

any communications "(1) made in a judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action." Sharper Image Corp. v. Target Corp., 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (citations omitted). To have a connection or logical relation to the action, the communication must "function as a necessary or useful step in the litigation process and must serve its purpose." Rothman v. Jackson, 49 Cal. App. 4th 1134, 1146 (1996). The test "cannot be satisfied by communications which only serve interests that happen to parallel or complement a party's interest in the litigation." Id. at 1147. Instead, the "connection or logical relation" requirement "can be satisfied only by communications which function intrinsically, and apart from any consideration of the speaker's intent, to advance a litigant's case." Id. at 1148.

Here, as stated above, Plaintiff's email communication contains information regarding the litigation that informs customers of the pending litigation and warns them that they can be liable for purchasing any infringing product. (Exh. 1 to Schwartz Decl.) Therefore, the communication falls under California's litigation privilege since it has a logical relation to the action before the Court in that it advances the litigant's case by ensuring that customers are aware of the litigation and informing them of their potential liability. Therefore, the recipient of the email "had a substantial interest in Plaintiff's lawsuit against Defendants." Sharper Image, 425 F. Supp. 2d at 1079.

Defendants argue that the communication is commercial advertising since it was sent by Plaintiff's Sales Manager, contained a link to the digital catalog, and showed images of Plaintiff's product. (See Exh. 1 to Schwartz Decl.) This case is similar to Sharper Image where the court held that the litigation privilege barred the defendants' counterclaims even though the evidence "showed that Plaintiff hoped for commercial relationships with" the retailers that received the communication. Sharper Image, 425 F. Supp. 2d at 1075, 1079. Therefore, while the communication here contains commercial material, it falls within California's litigation privilege as it has a logical relation to the action and achieves the object of the litigation. Accordingly, the Court finds that Defendants' unfair competition claim is barred by California's litigation privilege.

### D.     Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A district court can deny leave "where the amendment would be futile . . . or where the amended complaint would be subject to dismissal." Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991) (citations omitted); see also Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).

Here, since Defendants' Fourth Claim for relief for false advertising and Fifth Claim for Relief for unfair competition are barred by the Noerr-Pennington doctrine and California's litigation privilege, respectively, any amendment to these claims will be futile. In addition, since

Defendants' First Claim for Relief is unnecessary as it is duplicative of Plaintiff's infringement claim, any amendment to the First Claim will also be subject to dismissal. However, since Defendants' Second Claim for Relief is dismissed for failure to state a claim, Defendants' are granted leave to amend this claim to meet the pleading requirements of Rule 8.

## IV. CONCLUSION

For the foregoing reasons, Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion. The Court (1) GRANTS Plaintiff's Motion to Dismiss Defendants' First, Second, Fourth, and Fifth Claims for Relief; and (2) DENIES Plaintiff's Motion to Dismiss Defendants' Third Claim for Relief. The Court dismisses Defendants' Second Claim for Relief WITH LEAVE TO AMEND. Defendants may file an amended counterclaim no later than May 13, 2013.

**IT IS SO ORDERED.**